# Richmond

Commonwealth of Virginia, Administrator of General Services, City of Richmond, City of Virginia Beach, County of Henrico, County of Chesterfield, Virginia Association of Counties v. Virginia Electric and Power Company, Et Al.

January 14, 1974.

Record Nos. 8252-8258.

Present, All the Justices.

*Andrew P. Miller, Attorney General of Virginia, Henry M. Massie, Jr., Assistant Attorney General of Virginia, for Commonwealth of Virginia; Harlington Wood, Jr., Assistant Attorney General of the United States [D.C.], Robert E. Kopp [D.C.], Thomas G. Wilson [D.C.], for Administrator of General Services; Conrad B. Mattox, Jr., City Attorney, James R. Saul, Assistant City Attorney, for City of Richmond; R. D. McIlwaine, III, J. Dale Bimson, City Attorney, for City of Virginia Beach; R. D. McIlwaine, III, Andrew W. Wood, County Attorney, for County of Henrico; Frederick T. Gray, Walter E. Rogers, Oliver D. Rudy, Commonwealth's Attorney, for County of Chesterfield; C. F. Hicks for Virginia Association of Counties.*

George D. Gibson, John W. Riely, Evans B. Brasfield, Guy T. Tripp, III, for Virginia Electric and Power Company. Richard D. Rogers, Jr., Lewis S. Minter for State Corporation Commission.

CARRICO, J., delivered the opinion of the court.

The question for decision in this case is whether the State Corporation Commission (hereinafter the SCC) has the power and is under the duty to regulate the rates charged by electric companies for service furnished to certain governmental entities for purposes such as lighting streets and public buildings.

Involved in the question are several statutory and constitutional provisions. Chapter 10 of Title 56 of the Code, which chapter pertains to light, power, and other utility companies generally, includes §§ 56-234[1] and -235. Section 56-234, so far as this case is concerned, imposes upon electric utilities the duty to furnish reasonably adequate service at reasonable and just rates and to charge uniformly therefor all persons or corporations using such service under like conditions. The Code section further provides, however, that "nothing herein contained shall be construed as applicable to schedules of rates, or contracts for service rendered by any [electric utility] to any municipal corporation or to the State or federal government."

Code § 56-235 provides, so far as this case is concerned, that if, upon investigation, the rates of any electric utility "shall be found to be unjust, unreasonable, insufficient or unjustly discriminatory or . . . preferential or otherwise in violation of any of the provisions of law," the SCC "shall have power to fix and order substituted therefor such . . . rates . . . as shall be just and reasonable."

Article IX, § 2 of the Constitution of Virginia of 1971 provides, insofar as is pertinent here, that "[s]ubject to such criteria and other requirements as may be prescribed by law, the [SCC] shall have the power and be charged with the duty of regulating the rates, charges, and services . . . of . . . electric companies."

The foregoing statutory and constitutional provisions present these issues:

1. Does Code § 56-235 prevail over and render inoperative the

---

1. Code § 56-232 is also prominent in the arguments of the parties. It provides, so far as this case is concerned, that "schedules," meaning schedules of rates and charges for service, shall not include contracts of electric utilities with municipal corporations or the state or federal government. In view, however, of the conclusion we later reach with respect to § 56-234, it will not be necessary to refer again to § 56-232.

provision of Code § 56-234 which purports to exempt from regulation the rates charged by electric companies for service furnished to municipal corporations or to the state or federal government?

2. If the answer to question No. 1 is in the negative, does Code § 56-234 violate Article IX, § 2 of the Constitution of Virginia of 1971 to the extent that the Code section purports to exempt such rates from regulation?

These issues arose in this manner: on September 11, 1972, Virginia Electric and Power Company (hereinafter VEPCO or the power company) filed with the SCC an application for declaratory judgment praying for an adjudication that the SCC had the power and duty to regulate the retail rates for service furnished to municipal corporations, counties, the Commonwealth, and the federal government. Such rates, it was alleged, had not theretofore been regulated because of the exemptive provision of Code § 56-234. The ground of VEPCO's application for relief was that the adoption of Article IX, § 2 of the Constitution of 1971 had rendered void and of no effect the exemptive provision of Code § 56-234.

A number of interested parties, including the present appellants[2], intervened in opposition to VEPCO's application. Argument was held before the SCC, and the matter was taken under advisement.

On December 12, 1972, the SCC entered a final order declaring that VEPCO was required "to furnish adequate service at just and reasonable rates . . . to all its customers without discrimination between governmental and other customers." Commissioner Catterall wrote the majority opinion of the SCC, and Commissioner Shannon concurred in a separate opinion. Commissioner Bradshaw dissented.

Although holding in favor of VEPCO, the SCC did not base its decision upon the ground asserted by the power company, *viz.*, that the adoption of Article IX, § 2 of the new constitution had invalidated Code § 56-234 to the extent that it purported to exempt from regulation the rates charged governmental entities for electric service. Instead, Commissioner Catterall ruled that Code § 56-235, which empowers the SCC to substitute just and reasonable rates where it finds unjust and unreasonable charges to exist, "prevails over anything to the contrary in 56-234." Similarly, Commissioner Shannon ruled that Code § 56-235 "takes precedence over § 56-234" and "makes it [the]

2. The appellants are: the Commonwealth, the Administrator of General Services on behalf of the federal government, the cities of Richmond and Virginia Beach, the counties of Henrico and Chesterfield, and the Virginia Association of Counties.

duty [of the SCC] to prescribe just and reasonable and nondiscriminatory rates in all cases."

█ In connection with the first issue in the case, *viz.*, whether Code § 56-235 prevails over and renders inoperative the exemptive provision of Code § 56-234, we have been treated to extensive discourses upon the constitutional, legislative, and interpretative history of the two code sections. Interesting though that history might be and however strongly it might support the conclusion we ultimately reach, we think much of it unnecessary to our decision.

Suffice to say, the SCC was created by the Constitution of 1902[3], but that instrument did not confer jurisdiction upon the SCC to regulate the rates of electric companies. The right to confer such power was reserved to the General Assembly[4]. In 1914[5], the General Assembly conferred upon the SCC the power to regulate electric companies, among other public utilities. This grant of power included not only the authority to regulate the rates of electric companies, but also the authority, now contained in Code § 56-235, to correct unjust and unreasonable rates. However, the legislation also contained the exemptive provision, now found in Code § 56-234, with respect to schedules of rates or contracts for service rendered to municipal corporations or to the state or federal government. And, until the decision of the majority was announced below in the present case, the rates charged the governmental entities had never been regulated.

Code §§ 56-234 and -235, insofar as applicable to electric companies, are parts of a comprehensive legislative plan for the regulation of the rates charged by those companies, which plan is fully detailed in the 14 sections comprising Articles 1 and 2 of Chapter 10, Title 56 of the Code. When §§ 56-234 and -235 are held up side by side and viewed in context with the entire chapter, there is no apparent conflict between the two Code sections. Section 56-234 appears to exempt from regulation the rates charged by electric companies for service rendered governmental entities and § 56-235 appears to authorize correction of unreasonable and unjust rates, if found to exist, in those *other* areas where the powers of the SCC are operative.

We would be disposed, therefore, to conclude that Code § 56-235 does not prevail over and render inoperative the exemptive provision of § 56-234. But the majority below expressed the view that our prior

---

3. Section 155.
4. Sections 156(b) and (c).
5. Acts 1914, c.340.

decisions dictate the opposite result. So we must defer the outcome until we have examined the earlier cases.

In this connection, we note that Commissioner Catterall stated in his opinion that the "Virginia Supreme Court has repeatedly held that . . . Section 56-235 prevails over anything to the contrary in 56-234." We also note that Commissioner Shannon stated that this court has "often held that § 56-235 takes precedence over § 56-234." In our research, however, we have been unable to find an understandable basis for these statements.

In one case upon which Commissioner Catterall relied, *Town of Victoria* v. *Victoria Ice, Light and Power Company*, 134 Va. 134, 114 S.E. 92 (1922), the forerunner of Code § 56-234, § 4066, was mentioned, and then only in passing, merely as being a part of the series of Code sections in which the section operative in that case, § 4071, now § 56-235, was also a part. We made no statement concerning the effect of the one Code section upon the other. Indeed, such a statement would not have been appropriate, because the rates there in dispute, which had been fixed by a municipal ordinance granting a franchise, were for service furnished the resident-customers of the town and not, as contemplated by Code § 56-234, for service to the town itself.

The only possible relevance of *Victoria* to the instant case lies in the contention now urged by VEPCO and the SCC that unless Code § 56-235 is held to prevail over § 56-234, there will result an abridgement of the police power of the state in violation of Article IX, § 6 of the Constitution of Virginia of 1971. The *Victoria* case is authority for the proposition that if the state grants a municipality the power to enter into an *inviolable* agreement fixing utility rates for the consuming public, an unconstitutional abridgement of the police power would result. But aside from the difference between the types of rates involved in *Victoria* and the case before us, the answer to the contention now urged is that the exemption purportedly granted by § 56-234 is not inviolable. The exemption may be repealed at will by the General Assembly.

Another case mentioned by Commissioner Catterall, *City of Richmond* v. *Virginia Railway and Power Company*, 141 Va. 69, 126 S.E. 353 (1925), dealt, as did *Victoria*, with rates charged the consuming public and not those involved here, *viz.*, the rates for service furnished to municipal corporations or to the state or federal government. Nothing contained in the opinion in the *Virginia Railway* case lends support to the proposition that Code § 56-235 prevails over § 56-234.

The other case upon which Commissioner Catterall relied, *Town of Vinton* v. *City of Roanoke*, 195 Va. 881, 80 S.E.2d 608 (1954), involved a civil proceeding in a court of record between the town and the city wherein the city had succeeded to the rights of a water company under an earlier agreement with the town. The question of regulation by the SCC of rates charged for service furnished to governmental entities was in no way involved in the case.

The sole case mentioned by Commissioner Shannon, *Commonwealth* v. *Shenandoah River Light and Power Corporation*, 135 Va. 47, 115 S.E. 695 (1923), does not support his statement that Code § 56-235 takes precedence over § 56-234. In that case, one of the parties sought to bring itself within one of the exceptions in the forerunner of Code § 56-234, an exception not now contained in that section. But because the party was not within the exception, we held that the contract there in dispute was subject to the authority of the SCC under what is now § 56-235. This is not to say, however, that an inapplicable statutory exception is overridden merely because another Code section is applicable in a given case.

On the other side of the picture, the appellants cite *Virginia-Western Power Company* v. *City of Clifton Forge*, 125 Va. 469, 99 S.E. 723 (1919). That case also dealt with rates charged the consuming public under a municipal franchise. We said, albeit by way of *obiter dictum*, that the SCC "is given no jurisdiction . . . over rates charged the municipalities themselves for electric current." 125 Va. at 478, 99 S.E. at 725. Although *Virginia-Western* was later overruled on other grounds by *Victoria*, nothing was said in the latter case which undermined the validity of the view expressed in the above-quoted language.

Again, in *Massaponax Sand and Gravel Corporation* v. *VEPCO*, 166 Va. 405, 186 S.E. 3 (1936), we said:

> "All contracts made between [electric] companies and their subscribers, *with the exceptions noted in Code, section 4066, as amended [now Code § 56-234]*, are subject to change of schedule in rates and charges which may thereafter be ordered by the [SCC]." (Emphasis added.) 166 Va. at 413, 186 S.E. at 7.

And we recently stated in *Commonwealth* v. *VEPCO*, 211 Va. 758, 180 S.E.2d 675 (1971):

> "[A] Virginia statute exempts from regulation by the [SCC] rates charged to 'any municipal corporation or to the State or fed-

eral government.' Va. Code Ann. § 56-234 (Supp. 1970)." 211 Va. at 760, n.1, 180 S.E.2d at 677-78, n.1.

Constitutional considerations aside, we come, then, to this: what we said as *obiter dictum* in *Commonwealth* v. *VEPCO, supra*, we now declare to be the *statutory law* of this state. Code § 56-234 exempts from regulation by the SCC rates charged by electric companies for service furnished to any municipal corporation or to the state or federal government.

■ Having reached this point, we must now decide whether Code § 56-234, as we have construed it, is violative of Article IX, § 2 of the Constitution of 1971. Here again, as with the statutory issue, we have had the benefit of extensive discussion concerning the historical evolution of the policy of exempting from regulation the rates charged for electric service furnished to governmental entities. In addition, we have been offered equally extensive discussion relating to the contemporaneous construction placed upon Article IX, § 2 vis-à-vis the exemptive provision of Code § 56-234. But again, though the discussion is interesting and supports our ultimate conclusion, we deem much of it unnecessary to our decision.

Suffice to say, we note once more that the Constitution of 1902 did not confer jurisdiction upon the SCC to regulate the rates of electric companies. That authority was later bestowed by statute in 1914. The purely statutory status continued until adoption of the new constitution in 1971, when the SCC's jurisdiction over electric and other companies was thus defined in Article IX, § 2:

> "*Subject to such criteria and other requirements as may be prescribed by law*, the [SCC] shall have the power and be charged with the duty of regulating the rates, charges, and services and, except as may be otherwise authorized by this Constitution or by general law, the facilities of railroad, telephone, gas, and electric companies." (Emphasis added.)

The language italicized above was not, however, proposed by the Commission on Constitutional Revision in its draft of Article IX, § 2. Instead, the Commission recommended that the sentence in which the italicized language is now found should read:

> "The [SCC] shall have the power and be charged with the duty of regulating the rates, charges, and services and, except as may be

otherwise authorized by this Constitution or by general law, the facilities of railroad, telephone, gas, and electric companies." *Report of the Commission on Constitutional Revision*, p. 284 (1969).

The italicized language, "[s]ubject to such criteria and other requirements as may be prescribed by law," was added by the General Assembly when it gave approval to the proposed constitution prior to its submission to the electorate. The italicized language was in the proposed constitution as approved by the electorate, and it became a part of the Constitution when that document became effective July 1, 1971.

The crucial question becomes, therefore, what is the meaning of the italicized language? We agree with VEPCO that the meaning is clear and unambiguous and that we need not resort to extrinsic evidence in the form of legislative debate or contemporaneous construction to supply the meaning. We do not, however, agree with VEPCO upon the meaning to be given the italicized language. VEPCO says that the disputed language simply means that the General Assembly has the right to prescribe a "manual of procedure" for the SCC and not to grant "legislative power to curtail or eliminate the [SCC's] 'power and duty' with regard to . . . particular classes of rates charged" by electric utilities.

The ready and complete answer to VEPCO's "manual of procedure" argument is found within the new constitution itself. The last paragraph of § 3 of Article IX reads as follows:

"The [SCC] may prescribe its own rules of practice and procedure not inconsistent with those made by the General Assembly. The General Assembly shall have the power to adopt such rules, to amend, modify, or set aside the [SCC's] rules, or to substitute rules of its own."

This paragraph from § 3, dealing specifically with the subject of rules of practice and procedure, vests in the General Assembly full and complete power to prescribe such rules or to alter or repeal those which may be promulgated by the SCC. It is difficult to believe that the General Assembly, in approving this paragraph for submission to the electorate while at the same time adding the italicized language to § 2, intended only to accomplish a single end in both instances—the reservation of the right to prescribe rules of procedure. If the

language in § 2, "[s]ubject to such criteria and other requirements as may be prescribed by law," means only that the General Assembly may prescribe rules of procedure, then most of the quoted paragraph of § 3 would be completely superfluous, and that cannot be. So we reject VEPCO's argument.

Nor do we find persuasive VEPCO's further argument concerning § 2 that there is an "obvious contrast" between the word "subject" in the first part of the sentence in question and the word "except" in the second part, the latter word referring to the "facilities," and the former to the "rates," of the listed public utilities. The effect of this "obvious contrast," VEPCO says, is that only "the method" of the exercise of the SCC's jurisdiction with respect to rates is subordinate to legislative prescription. But when the italicized language in dispute is given its proper meaning, any difference between the two words becomes insubstantial.

The power to determine "the method" of the exercise of the SCC's jurisdiction, VEPCO asserts, means only that the General Assembly may prescribe " 'what factors are to go into rate-making, what rate of return is to be allowed, what basis (e.g., original cost or replacement value) is to be used to determine the value of plant against which rate of return is to be computed, etc.' " But the power of the General Assembly to prescribe these factors is fully reserved by the words, "[s]ubject to such criteria . . . as may be prescribed by law," contained in § 2. The view espoused by VEPCO would not, therefore, give any meaning to the words, "and other requirements," also found in § 2. These important words must, however, be given their full meaning.

In our opinion, the clear and unambiguous meaning of the language, "[s]ubject to such criteria and other requirements as may be prescribed by law," as related to the case before us, is that the authority of the SCC to regulate the rates charged by electric companies for service furnished to governmental entities is subordinate to the power of the General Assembly to command otherwise. To take this view is but to give the words "subject to" and "requirements" only their common, everyday meaning.

The exemptive provision of Code § 56-234 is just such a command otherwise. The provision commands that the rates charged by electric companies for service furnished governmental entities shall not be regulated by the SCC. The exemptive provision was permitted by the General Assembly to remain in the Code following adoption of

Article IX, § 2 despite a legislatively-ordered, painstaking review to discover and remove statutory conflicts with the new constitution. The failure to remove the exemptive provision of Code § 56-234 clearly indicates that the General Assembly discerned no conflict between the statute and the new constitution. Nor do we find such conflict. So we rule that § 56-234, to the extent that it exempts from regulation the rates charged for electric service furnished to governmental entities, is not violative of Article IX, § 2 of the Constitution of 1971.

For the reasons assigned, the judgment of the SCC will be reversed and the application for declaratory judgment filed by VEPCO will be dismissed.

*Reversed and dismissed.*