**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,**
Plaintiff–Appellee,

v.

**BUCHART–HORN, INC.,**
Defendant–Appellant.

No. 88–2965.

United States Court of Appeals,
Fourth Circuit.

Argued June 8, 1989.

Decided Oct. 3, 1989.

John Faris Myers (Thomas J. Spain, Lawrence E. Conley, Frank, Bernstein, Conaway & Goldman, Bethesda, Md., on brief), for defendant-appellant.

Gerard J. Stief, Associate Gen. Counsel (Thomas B. Dorrier, Associate Gen. Counsel, Arnold I. Melnick, Deputy Gen. Counsel, Robert L. Polk, Acting Gen. Counsel, Washington, D.C., on brief), for plaintiff-appellee.

Before ERVIN, Chief Judge,
SPENCER, United States District
Judge for the Eastern District of
Virginia, sitting by designation, and
HOFFMAN, Senior United States
District Judge for the Eastern District
of Virginia, sitting by designation.

ERVIN, Chief Judge:

The defendant, Buchart–Horn, Inc., appeals from summary judgment entered against it after the Army Corps of Engineers Board of Contract Appeals ruled that Buchart–Horn provided substandard design specifications to its client, the Washington Metropolitan Area Transit Authority. Because we find that the parties' contract did not confer jurisdiction over this dispute upon the Board of Contract Appeals, we reverse and remand for trial.

I.

This construction contract dispute arises from structural problems that developed in the roof of Grosvenor Station on the Wash-

ington, D.C., Metro subway. The Washington Metropolitan Transit Authority ("WMATA") hired Buchart–Horn to design and prepare construction plans and specifications for the station. In December of 1975, Buchart–Horn delivered the design plans and was paid $930,000 under the terms of its contract with WMATA. In the Spring of 1978, before construction on the station was complete, WMATA noticed cracking in the station's mezzanine roof. WMATA hired several consultants to inspect the problem, determine its origin, and recommend remedial action. One of these reports, prepared by the engineering firm of Amman & Whitney, attributed the cracking to Buchart–Horn's design. The Amman & Whitney report concluded that cracking in the roof's concrete surface occurred due to torsion stress in the roof's spandrel beams and that Buchart–Horn failed to conform to industry standards in anticipating and planning for this stress. WMATA subsequently demanded that Buchart–Horn bear the roughly one million dollars in costs required to repair the cracks.

When Buchart–Horn denied liability for the repair costs, WMATA filed this action in district court alleging professional negligence and breach of contract. Shortly thereafter, however, WMATA moved to stay the district court proceedings. WMATA asked for the stay to allow liability to be determined through administrative channels established by a "Disputes" clause in the parties' contract.[1] Buchart–Horn op-posed this motion on the grounds that WMATA's professional negligence and breach claims were beyond the scope of the Disputes clause. The district court granted WMATA's motion and, pursuant to the Disputes clause, the matter was heard by WMATA's Contracting Officer.

The Contracting Officer determined that Buchart–Horn was liable for the full cost of repairs. Buchart–Horn timely appealed his ruling to the Army Corps of Engineers Board of Contract Appeals ("the Board") which serves as WMATA's duly authorized representative for reviewing Contracting Officer decisions. Before the Board, Buchart–Horn again argued that WMATA's professional negligence and breach of contract claims were beyond the scope of the Disputes clause and thus not subject to administrative determination. The Board rejected this argument and, after a hearing, found that Buchart–Horn's plans for Grosvenor Station failed to adhere to industry standards promulgated by the American Concrete Institute. The Board also found that this design failure caused the roof cracking and ordered Buchart–Horn to pay $824,550 toward the costs of repair.

WMATA then shifted the dispute back to the district court where the case was reopened. On WMATA's motion for summary judgment, the district court found that the Board's decision was supported by substantial evidence and, accordingly, enforced the Board's order.

---

1. The Disputes clause is a relatively standard provision in many government contracts. Article 15 of the contract at issue here states:

(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within thirty (30) days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to [WMATA's] Board of Directors. The decision of the Board of Directors or its duly authorized representatives for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence. In connection with any appeal proceeding under this Article, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

(b) This Disputes Article does not preclude consideration of questions of law in connection with decisions provided for in Paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decision of the Board of Directors or its representatives on a question of law.

## II.

In this appeal, Buchart–Horn renews its argument that WMATA's professional negligence and breach claims are beyond the scope of the Disputes clause and therefore beyond the Board's administrative jurisdiction. If Buchart–Horn is correct, the Board's decision, including its findings of fact, were beyond its authority, *see United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 407–408, 86 S.Ct. 1545, 1552–1553, 16 L.Ed.2d 642 (1965) (*"Utah Construction"*), and Buchart–Horn will be entitled to trial *de novo* in the district court. *See Len Company and Associates v. United States*, 385 F.2d 438, 440, 181 Ct.Cl. 29 (1967). Whether or not WMATA's claims fall within the Disputes clause depends, of course, on the parties' intentions and for that determination we must look to the language of their contract.

■ Fortunately, we have considerable guidance in making that determination for the Disputes clause "is a standard feature of government contracts, and arguments concerning [its] scope and appropriate function are not novel." *Rohr Industries v. WMATA*, 720 F.2d 1319, 1322 (D.C.Cir. 1983). The operative language of the clause requires "any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the contracting officer." In

*Utah Construction*, the Supreme Court addressed the scope of a Disputes clause nearly identical to the one at issue here. *See Utah Construction*, 384 U.S., at 399, note 2, 86 S.Ct., at 1548, note 2. The Court squarely rejected the government's contention "that the disputes clause authorizes and compels administrative action in connection with all disputes arising between the parties in the course of completing the contract." *Id.*, at 404, 86 S.Ct., at 1551. Instead, after conducting an extensive review of how Disputes clauses had been interpreted in lower courts, the Court found that administrative resolution of a given claim is only authorized if some other provision of the contract establishes an administrative remedy sufficient to afford full relief for the claim.[2] Thus a Disputes clause is best understood as merely establishing an administrative procedure for resolving quarrels. Other contractual provisions, by granting a contract administrator authority to afford some remedy for the quarrel, must in effect confer jurisdiction.

■ WMATA asserts that by reason of the "Responsibility for Work" clause, the parties' contract does contain a specific provision establishing an administrative remedy for its claims of professional negligence and breach.[3] We disagree. On a straightforward reading, Article 7 simply does not, as required by *Utah*, confer upon the Contracting Officer the power to make any

---

**2.** For more recent articulations of the *Utah* rule see, e.g., *Len Company, supra,* 385 F.2d, at 442 ("To the extent that complete relief is available under a specific provision—i.e., the claim is both cognizable under and adjustable by the terms of the contract—... the controversy arises under the contract and is subject to initial administrative resolution as provided in the 'Disputes' article."); *Edward R. Marden Corp. v. United States,* 442 F.2d 364, 368, 194 Ct.Cl. 799 (1971) ("It is clear from *Utah* that the Supreme Court regarded as redressable under the contract (and, therefore, determinable administratively under the Disputes clause) only those claims for which an adjustment is specifically provided by the contract."); and *Rohr Industries v. WMATA,* 720 F.2d, at 1323 ("[I]t is now settled that the fact-disputes clause extends only to controversies redressable by specific provisions in the contract. Stated differently, a fact-dispute is one "arising under this contract" only when the disputed fact is capable of complete resolution by a procedure specified in the con-

tract."), *quoting Bethlehem Steel Corp. v. Grace Line, Inc.,* 416 F.2d 1096, 1101 (D.C.Cir.1969).

**3.** Article 7 of the parties' contract, entitled "Responsibility for Work,". states:

(a) Notwithstanding any review, approval, acceptance or payment by [WMATA], the Contractor shall be responsible for the professional and technical accuracy of all designs, drawings, specifications and other work or material furnished under this contract, and shall without additional cost or fee correct or revise any errors or deficiencies in its performance.

(b) The Contractor shall likewise be liable to the Authority for all costs to it of any kind caused by or resulting from the Contractor's negligent performance of this contract.

(c) The rights and remedies of [WMATA] provided in this clause are in addition to any other rights or remedies provided by law or under this contract.

determination or adjustment in connection with a contractor's failure to provide professionally accurate designs. Indeed, neither the Contracting Officer or the Board are mentioned in the text of Article 7.

In this respect Article 7 stands in sharp contrast to other standard clauses in the parties' contract which have traditionally been recognized as being within the scope of a Disputes clause. Article 13, regarding changes in the scope of work to be performed, requires the contractor to file a claim for a change related adjustment with the Contracting Officer and expressly states that any failure to agree to the Contracting Officer's decision "shall constitute a dispute concerning a question of fact within the meaning of [the Disputes clause]." Similarly Article 16, regarding suspension of work, expressly references the Disputes clause and Article 19, regarding gratuities, conveys upon the contracting officer the power to hold hearings and terminate the contract upon finding that improper gratuities have been provided by the contractor to WMATA personnel. Each of these clauses contains language expressly conferring upon the Contracting Officer authority to adjust the contract or to take action to resolve issues within the scope of the clause. Articles 13, 16, and 19 demonstrate that WMATA knew full well how to draft contractual language to clearly indicate matters subject to administrative determination.[4] WMATA simply failed to include such language in Article 7. We thus cannot conclude that the parties intended to submit claims of professional negligence or claims that Buchart–Horn breached its obligation to provide professionally and technically accurate designs for administrative resolution.[5]

### III.

WMATA's claims therefore do not fall within the scope of the Disputes clause and Buchart–Horn is entitled to trial *de novo* on all claims against it. The judgment of the district court is therefore

REVERSED AND REMANDED.

4. For this reason we remain unpersuaded by WMATA's suggestion that the language of Article 7, section c, *see* note 3, *supra*, indicates that the parties intended claims of professional negligence to be administratively resolved. No good reason appears for concluding that the parties intended to memorialize by opaque or ambiguous language, what they elsewhere memorialized clearly.

5. Since we find that the Board had no jurisdiction over WMATA's professional negligence and breach of contract claims, we need not address Buchart–Horn's argument that the Board's decision was incorrect.