## NORAIR ENGINEERING CORP.

### v.

## WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY.

### No. Civ.A. DKC 96–3980.

United States District Court,
D. Maryland.

March 4, 1998.

Order Supplementing Opinion
May 15, 1998.

(F) for relief under Rule 60 if the motion is filed no later than 10 days after the entry of judgment.

8. The internal operating procedures of the Territorial Court provide for the Presiding Judge to assign cases. Therefore, despite the lack of jurisdiction, it would appear that the reassignment of this matter to Judge Hollar would not be affected by the finding that the Territorial Court lacked jurisdiction.

Charles A. Patrizia, Paul, Hastings, Janofsky & Walker, Washington, DC, for Norair Engineering Corp., plaintiff.

Thomas B. Dorrier, Washington Metro Area Transit Authority, Washington, DC, Robert L. Polk, Law Office, Washington, DC, for Washington Metropolitan Area Transit Authority, defendant.

Charles A. Patrizia, Paul, Hastings, Janofsky, & Walker, Washington, DC, for Slattery Associates, Inc., movant.

## MEMORANDUM OPINION

CHASANOW, District Judge.

Currently pending and ready for resolution are Plaintiff Norair Engineering Corporation's ("Norair") Motion for Partial Summary Judgment, Defendant Washington Metropolitan Transit Authority's ("WMATA") Cross–Motion for Partial Summary Judgment, and a Motion to Intervene by Slattery Associates, Inc. ("Slattery") and G.T. Group, Inc. ("G.T.Group") (collectively "the Intervenors"). WMATA has opposed the Intervenors' motion. No hearing is deemed necessary and the court now rules pursuant to Local Rule 105.6.

### I. Facts

Norair and WMATA entered into a Joint Stipulation of Facts concerning their dispute that this court adopts for the purposes of this Memorandum Opinion. A copy of the statement is attached hereto.

Like Norair, the Intervenors contracted to build subway stations for WMATA and now are embroiled in a controversy over the isolation pads used therein. The contract the Intervenors signed with WMATA was identical in form to the contract between Norair and WMATA. Additionally, the Intervenors and Norair share counsel and have filed nearly identical complaints.

### II. Motion to Intervene

The permissive intervention of a third party to an action is governed by FED.R.CIV.P. 24(b), which provides as follows in relevant part:

Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or

fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

FED.R.CIV.P. 24(b)(2); see also Zimmerman v. Bell, 101 F.R.D. 329, 331 (D.Md.1984).

 Given these general guidelines, permissive intervention primarily lies at the discretion of the court. See Hill v. Western Elec. Co., 672 F.2d 381, 385 (4th Cir.), cert. denied, 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982). The court has reviewed the memoranda submitted by the Intervenors and WMATA in this matter. Despite the existence of common facts and questions of law, the court concludes that it will exercise its discretion to deny the Intervenors' motion. The need to avoid unduly prejudicing the existing parties supports this decision. The present case centers around the issue of whether Norair is prohibited from challenging the Army Corps of Engineers Board of Contract Appeals' ("BCA") jurisdiction. Because this question raises issues that are not common to Norair and the Intervenors, the introduction of other parties into the present litigation would unduly complicate matters.

### III. Motions for Summary Judgment

#### A. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. Anderson, 477 U.S. at 250, 106 S.Ct. 2505; see also Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir.1987); Morrison v. Nissan Motor Co., 601 F.2d 139, 141 (4th Cir.1979); Stevens v. Howard D. John-

*son Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED.R.CIV.P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1282 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.,* 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex Corp.,* the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.,* 736 F.2d 946, 958–59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd,* 388 F.2d 987 (4th Cir.1967)).

There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

**B. Analysis**

■ The lone question subject to the cross motions for partial summary judgment is whether the BCA has jurisdiction over the dispute between Norair and WMATA. Rather than arising as a legislative creation, board jurisdiction in government contract cases arises out of the parties' agreement. *See United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 404, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) ("The power of the administrative tribunal to make final and conclusive findings on factual issues rests on the contract, more specifically on the disputes clause."); *see also General Dynamics v. United States,* 214 Ct.Cl. 607, 558 F.2d 985, 989 (1977). Therefore, the issue of jurisdiction is a matter of contract interpretation. *See Utah Constr.,* 384 U.S. at 413, 86 S.Ct. 1545. As a result, two questions arise: (1) whether prior judicial interpretations of standard government contract language control the issue of whether the BCA has jurisdiction; and (2) whether, if controlling precedent finds an absence of jurisdiction, the prior proceedings before the BCA prevent a challenge to the BCA's jurisdiction at this hour. For the reasons that follow, the court concludes that the BCA has jurisdiction over the parties' dispute.

**1. Contractual Provisions Do Not Create Jurisdiction**

■ The law in the Fourth Circuit is settled as to how government contracts endow contract appeals boards with jurisdiction to resolve disputes between the parties. *See WMATA v. Buchart–Horn, Inc.* 886 F.2d 733, 735 (4th Cir.1989). Applying the Supreme Court's holding in *Utah Construction,* the Fourth Circuit found that disputes clauses do not themselves create jurisdiction in the reviewing body, but merely create the framework for administrative review. *See id.* "[A]dministrative review of a given claim

is only authorized if some other provision of the contract establishes an administrative remedy sufficient to afford full relief." *Id.* The disputes clause in this case is identical to the disputes clause at issue in *Buchart–Horn.*[1] Therefore, this court must look to the underlying clauses in the contract to determine whether jurisdiction is created thereunder.[2]

■ Portions of the "Inspection and Acceptance" (§ 1.10(b)(c) and (f)) and "Warranty of Construction" (§ 1.48) clauses constitute the basis of WMATA's claim against Norair. Neither clause contains language granting the contract administrator authority to provide full relief to disputes between the parties.[3] Without directly citing to the contractual language it feels provides for the

1. Both disputes clauses provide:
 (a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within thirty (30) days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer, a written appeal addressed to [WMATA's] Board of Directors. The decision of the Board of Directors or its duly authorized representatives for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence. In connection with any appeal proceeding under this Article, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of his appeal. Pending final decisions of a dispute hereunder, the Contractor shall proceed diligently with the performance of a the contract and in accordance with the Contracting Officer's decision.
 (b) This Disputes Article does not preclude consideration of questions of law in connection with decisions provided for in Paragraph (a) above. Nothing in this contract, however, shall be construed as making final the decision of the Board of Directors or its representatives as a question of law.
 *Buchart–Horn,* 886 F.2d at 734, n. 1; Application of Norair Engineering Corp. for Temporary Restraining Order, paper no. 3, at Ex. A, § 1.6.

2. The BCA found that it has jurisdiction over this matter in an opinion that does not follow the Fourth Circuit's approach to the issue in *Buchart–Horn.* (*See* Memorandum of Points and Authorities in Reply to Norair's Opposition to WMATA's Cross–Motion for Summary Judgment, paper no. 13, ex. 1 "Opinion on Motion to Dismiss" at 3–8). This court, however, is bound by Fourth Circuit precedent.

3. The relevant clauses read as follows:
 1.10(b) The contractor shall, without charge, replace any material or correct any workmanship found by the Authority not to conform to the contract requirements, unless in the public interest the Authority consents to accept such material or workmanship with an appropriate adjustment in contract price. The Contractor shall promptly segregate and remove rejected material from the premises.
 1.10(c) If the contractor does not promptly replace rejected material or correct rejected workmanship, the Authority (1) may, by contract or otherwise, replace such material or correct such workmanship and charge the cost thereof to the Contractor, or (2) may terminate the Contractor's right to proceed in accordance with Article 1.5 of these General Provisions.
 1.10(f) Unless otherwise provided in this contract, acceptance by the Authority shall be made as promptly as practicable after completion and inspection of all work required by this contract. Acceptance shall be final and conclusive except as regards latent defects, fraud, or such gross mistakes as may amount to fraud, or as regards the Authority's rights under any warranty or guarantee.
 1.48(a) Except as otherwise expressly provided in this Contract, the Contractor shall remedy as his own expense any failure of the work (including equipment) to conform to contract specifications and any defect of material, workmanship, or design in the work—but excluding any defect of any design furnished by the Authority under the Contract provided that the Authority gives the Contractor notice of any such failure of defect promptly after discovery but not later than one year after final acceptance of the work, except that in the case of defects or failures in a part of the work of which the Authority takes possession prior to final acceptance, such notice shall be given not later than one (1) year from the date the Authority takes such possession. The Contractor, at his own expense, shall also remedy damage to equipment, the site, or the buildings or the contents thereof which is the result of any failure or defect, and restore any work damaged in fulfilling the terms of this article. Should the Contractor fail to remedy any such failure or defect within a reasonable time after receipt of notice thereof, the Authority shall have the right to replace, repair, or otherwise remedy such failure or defect at the contractor's expense. This warranty shall not delay final acceptance of or final payment for the contract work.

administrative remedy, WMATA adopted the reasoning of the BCA's decision on jurisdiction and attached a copy to its reply. The BCA found that the identification of latent defects revived WMATA's rights under 1.10(b) to accept non-conforming materials and make an adjustment in the contract price. Whether or not BCA was correct regarding the effect of latent defects on acceptance rights, this clause mentions neither the contracting officer nor the disputes clause. On the other hand, a number of other clauses contain language specifically invoking the contracting officer's authority and the disputes clause. Examples include the changes clause and the termination provisions. The use of specific language in other clauses demonstrates that the language used in 1.10(b) is insufficient to vest the contracting officer with authority to remedy the dispute.

The cases WMATA cites to demonstrate that the BCA has exercised jurisdiction over contracts containing less specific language than *Buchart–Horn* requires are not precedent in this jurisdiction. Additionally, the court is not persuaded by WMATA's attempt to argue that the express preclusion of administrative adjudication in the unrelated "Value Engineering" clause gives rise to an inference that the contract allows for jurisdiction except where specifically negated. This argument is out of step with the Fourth Circuit's ruling that jurisdiction must be affirmatively created in an underlying clause. The Fourth Circuit held that "WMATA knew full well how to draft contractual language to clearly indicate matters subject to administrative determination," *Buchart–Horn*, 886 F.2d at 736, and "[n]o good reason appears for concluding that the parties intended to memorialize by opaque or ambiguous lan-

guage, what they elsewhere memorialized clearly." *Id.* at 736 n. 4. This court will not extrapolate from the bar against jurisdiction in one clause to find that jurisdiction is somehow bestowed by another clause nor will it rely on vague language. Therefore, the court finds that the parties did not originally contract to have the BCA resolve disputes arising under the clauses at issue in this case.[4]

### 2. Norair is Bound By Consent to BCA Jurisdiction

Norair's basic premise is that it has a right to have the breach of contract claim against it adjudicated *de novo* in an Article III court.[5] However, "[t]he Supreme Court has long recognized that a private litigant may waive its right to a jury and to an Article III court in civil cases." *Seaboard Lumber Co. v. United States,* 903 F.2d 1560, 1563 (Fed. Cir.1990) (citing *Commodity Futures Trading Comm. v. Schor,* 478 U.S. 833, 848, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986)). *Seaboard Lumber* stands for the proposition that agreeing to a government contract containing dispute resolution procedures which do not entail a court trial constitutes a contractual waiver of that right. *Id.* at 1565. As a contractual waiver, contract board review is analogous to arbitration. *See Gold Coast Mall, Inc. v. Larmar Corp.,* 298 Md. 96, 468 A.2d 91, 95 (1983) ("Arbitration is the process whereby parties voluntarily agree to substitute a private tribunal for the public tribunal otherwise available to them."). As a result of this analogy, precedent regarding arbitration is directly applicable to the present dispute.[6]

 Parties cannot be forced to allow an alternative forum to resolve a dispute when such resolution is not provided in the under-

---

4. Because the contract does not provide for any remedial procedure, it is not necessary to address Norair's arguments that the remedial procedures provided do not afford full relief.

5. *Buchart–Horn* did not address this issue because the contractor contested BCA jurisdiction in the district court prior to the administrative proceedings.

6. In *McLean Contracting Co. v. Maryland Transp. Auth.,* 70 Md.App. 514, 521 A.2d 1251, 1257 (Ct.Spec.App.), *cert. denied,* 310 Md. 130, 527

A.2d 51 (1987), McLean Contracting argued that the state agency had waived its right to administrative adjudication in the same manner as a party can waive its right to arbitration. The reason that the Court of Special Appeals rejected this analogy was that the administrative procedures at question were merely a contractual embodiment of statutorily mandated procedures. As review is not statutorily mandated in this case, the analogy between arbitration and board review as contractually created remedies is appropriate.

lying contract. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."). As the contract did not provide BCA jurisdiction over this dispute, Norair ordinarily would be correct that it should not be required to adjudicate this matter before the BCA.

Numerous courts, however, have held that the scope of an arbitration agreement expands when a party fails to state a timely jurisdictional objection during the arbitration proceeding. In *Richmond, Fredericksburg &. Potomac R.R. v. Transportation Communications Int'l Union,* 973 F.2d 276, 279–280 (4th Cir.1992), the Fourth Circuit held:

> From the outset, then, RF & P proceeded on the assumption that the parties had empowered the arbitrator to consider the legality of its unilateral severance offer; any objections to the arbitrator's power were made late in the day, after the die appeared to be cast. The railroad will not now be heard to challenge the arbitrator's authority to resolve that issue.

*Id.; see also Jones Dairy Farm v. Local No. P–1236, United Food and Commercial Workers Int'l Union,* 760 F.2d 173, 175–76 (7th Cir.), *cert. denied,* 474 U.S. 845, 106 S.Ct. 136, 88 L.Ed.2d 112 (1985) ("If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it."); *Franklin Electric Co. v. United Automobile Aerospace and Agricultural Implement Workers of America,* 886 F.2d 188, 191 (8th Cir.1989) ("Consent to arbitrate may be implied from the parties' conduct."); *International Brotherhood of Teamsters, Local 117 v. Washington Employers, Inc.,* 557 F.2d 1345, 1350 (9th Cir.1977) (holding that waiver prevented party from challenging arbitrator's jurisdiction only after arbitrator's unfavorable decision).

Likewise, Norair's initiation of BCA proceedings and failure to object to jurisdiction before the BCA resolved the liability issue were manifestations of Norair's consent. Norair has argued that its challenge is timely because it predates BCA action on the quantum proceeding. This argument either reflects selective amnesia as to the prior BCA proceeding or is an invitation for this court to address separately the liability and damages phases. Norair, however, has not provided any reason why the adjudication should be bifurcated in this manner. Therefore, Norair may not now challenge a dispute resolution procedure to which it has previously manifested its consent.

Norair's remaining arguments relate to the circumstances surrounding the initiation of its appeal and WMATA's knowledge regarding the law governing BCA jurisdiction. While Norair arguably had little choice but to preserve its right to appeal by initiating the BCA proceeding, nothing stood in its way from simultaneously bringing an action in this court to challenge the proceedings or from raising the issue of jurisdiction before the BCA during the initial stages.

Despite Norair's insinuations, WMATA's actions do not affect consideration of this issue. At the time WMATA advised Norair of its "right" to appeal, the Fourth Circuit had not yet reversed the district court's ruling in *Buchart–Horn* that the parties should resolve their dispute in the administrative forum. Therefore, the application of *Utah Construction* was uncertain. Once adversarial proceedings before the BCA were initiated, it is difficult to see how WMATA owed Norair a duty to educate its counsel as to changes in the law brought about by a publicly disseminated appellate decision. Further, Norair has not explained how WMATA's citation to *Utah Construction* and *Buchart–Horn* before the BCA could waive the right to contend that Norair's prior conduct manifested consent to resolving the issue before the board. Therefore, as Norair has no one but itself and its prior counsel to blame for its consent to BCA jurisdiction, its attempt to ascribe blame to WMATA fails.

■ Principles of equity also mandate the result this court has reached. The BCA found that Norair was estopped from challenging jurisdiction at this point because of the numerous, lengthy proceedings which have taken place before it and the resources WMATA has expended on matters before the

BCA and on negotiations with Norair regarding damages. As Norair argues, a finding of estoppel is rare, but it is not unprecedented. *See General Dynamics Corp. v. United States,* 214 Ct.Cl. 607, 558 F.2d 985 (Ct.Cl. 1977). In *General Dynamics,* the court held that the government was estopped from challenging the BCA's decision after participating in lengthy proceedings before the board. *See id.* at 990–991. While the court noted that its opinion rested on "peculiar facts," it did not, nor could it have, said that other circumstances do not justify the same result. *See id.* at 987. As the BCA found, the present matter likewise involves extreme facts. There is no excusing the delay in challenging jurisdiction in federal court. Fairness dictates that Norair not be allowed to raise the question of jurisdiction after WMATA has expended significant resources in reliance on Norair's participation in the administrative process. Therefore, estoppel also precludes Norair's challenge to BCA jurisdiction.

WMATA argues that the parties' actions before the BCA amount to a modification of their contract. The issue in this case, however, is not a true modification. Modifications are changes in the contractual terms brought about through a meeting of the minds. There is no evidence that either party intended to alter the terms of their agreement. The record indicates that WMATA felt the original terms allowed jurisdiction, while Norair either agreed with this conclusion at the time or failed to express its disagreement. As the original terms of the contract remain intact, if a new latent defect were discovered, the BCA would not have jurisdiction.

### IV. Conclusion

For the foregoing reasons, the Intervenors' Motion to Intervene is DENIED, Norair's Motion for Partial Summary Judgment is DENIED, and WMATA's Cross–Motion for Partial Summary Judgment is GRANTED. A separate order will be issued.

### MEMORANDUM OPINION

On March 2, 1998, the court ruled that the Army Corps of Engineers Board of Contract Appeals ("BCA") had jurisdiction over a dispute between Plaintiff Norair Engineering Corp. ("Norair") and Washington Metropolitan Area Transit Authority ("WMATA"). Norair and WMATA are parties to two contracts for construction of subway stations. Contract number 1D0071 ("D7 Contract") was for construction of the Potomac Avenue Station and contract number 1C0062 ("C–6b Contract") was for construction of the Pentagon Station. The parties briefing on the prior motion, however, failed to differentiate between the status of the disputes regarding the two contracts, thus the court's ruling was specifically based on the status of the D7 Contract.

Via its Motion for Summary Judgment and Supplementation of the Court's Order of March 2, 1998, WMATA asked the court to clarify whether BCA jurisdiction extends to the dispute regarding the C6–b Contract. The issue is fully briefed, no hearing is deemed necessary, and the court now rules pursuant to Local Rule 105.6.

### I. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505; *see also Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987); *Morrison v. Nissan Motor Co.,* 601 F.2d 139, 141 (4th Cir.1979); *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir.1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FED.R.CIV.P. 56(c); *Pulliam Inv. Co.,* 810 F.2d at 1282 (citing *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

In *Celotex Corp.*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548. However, " 'a mere scintilla of evidence is not enough to create a fact issue.' " *Barwick v. Celotex Corp.*, 736 F.2d 946, 958–59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir.1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

## II. Analysis

In the March 2, 1998 opinion, the court held that while the original contracts did not confer jurisdiction upon the BCA, BCA jurisdiction arose by virtue of Norair's consent to adjudication in that forum. Additionally, the court held that principles of waiver and estoppel and equity precluded Norair from challenging BCA jurisdiction.

 To resolve the present matter, the court need only address the issue of whether Norair consented to BCA resolution of the C–6b Contract. While the adjudication of the D7 Contract progressed much further than the C–6b Contract, the record establishes that Norair also consented to BCA jurisdiction over the C–6b Contract. Norair filed its appeal in September, 1987. From that point forward, the record contains extensive correspondence between the parties and the BCA regarding procedural aspects of the appeal. The only reasonable inference from the contents and extent of this correspondence was that the parties anticipated that the BCA would, at some point, adjudicate the entitlement and, if necessary, the quantum aspects of the C–6b Contract appeal. Nothing in the record indicates that Norair even considered the possibility that the BCA lacked jurisdiction. That Norair was operating under such a presumption is further evidenced by their consent to BCA adjudication over similar issues in the D7 Contract proceeding.

Norair attempts to make much of the distinction between whether the D7 Contract case and the other floating slab cases were ever formally consolidated. This issue, however, is immaterial. That the parties viewed these cases as highly related is evidenced by the ultimately unsuccessful efforts to reach an omnibus settlement. What the parties were trying to settle was not an abstract contract dispute occurring in a vacuum. Rather, it was issues within the context of the various BCA appeals that were on the table. Thus, for roughly nine years, Norair engaged in a course of conduct which indicated its consent to BCA jurisdiction. As a result, WMATA is entitled to summary judg-

ment and the BCA has jurisdiction over the C–6b Contract.

Additionally, while the facts also are less conclusive as regards the applicability of the waiver, estoppel and equity arguments, the record sufficiently demonstrates that these principles also demonstrate that BCA jurisdiction over this dispute is proper. There can be no dispute that WMATA's participation in negotiations to settle the BCA appeals would have been significantly altered had Norair contested jurisdiction at an earlier point in time.

### III. Conclusion

For the foregoing reasons to be read in conjunction with this court's March 2, 1998 Memorandum Opinion and Order, WMATA's motion for summary judgment is GRANTED.