**DELON HAMPTON & ASSOCIATES, CHARTERED; Envirodyne Engineers, Incorporated, Plaintiffs–Appellees,**

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant–Appellant.**

**No. 90–2047.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 1990.

Decided Aug. 6, 1991.

Gerard J. Stief, Associate Gen. Counsel, Washington Metropolitan Area Transit Au-

thority, Washington, D.C., argued (Thomas B. Dorrier, Associate Gen. Counsel, Arnold I. Melnick, Deputy Gen. Counsel, Robert L. Polk, Gen. Counsel, Francis R. Filiatreau, Linda Lazarus, Colin M. Dunham, Washington Metropolitan Area Transit Authority, Washington, D.C., on brief) for defendant-appellant.

Bruce Earl Titus, Venable, Baetjer & Howard, McLean, Va., argued (Lindsay B. Meyer, McLean, Va., on brief for plaintiff-appellee Delon Hampton & Associates; Barry L. Kroll, Williams & Montgomery, Ltd., Chicago, Ill., on brief for plaintiff-appellee Envirodyne Engineers), for plaintiffs-appellees.

Mary Sue Terry, Atty. Gen. of Va., H. Lane Kneedler, Chief Deputy Atty. Gen., Gail Starling Marshall, Deputy Atty. Gen., Guy W. Horsley, Jr., Senior Asst. Atty. Gen., Richmond, Va., for amicus curiae.

Before SPROUSE and WILKINSON, Circuit Judges, and HOUCK, District Judge for the District of South Carolina, sitting by designation.

## OPINION

SPROUSE, Circuit Judge:

The question we decide is whether the district court correctly determined that the Washington Metropolitan Area Transit Authority's ("WMATA") claim against an architectural and engineering firm was barred by Virginia's statute of limitations and statute of repose. Holding that the statutes did not bar WMATA's claim, we reverse.

Delon Hampton & Associates and Envirodyne Engineers, Inc.,[1] formed a joint venture (DHWN, but for simplicity, hereafter called "Hampton"), to provide architectural and engineering services to build the Alexandria Service and Inspection facility ("Alexandria facility"), a part of the Metrorail system of WMATA. WMATA claims that Hampton, which was awarded the contract to perform the services, committed numer-

---

**1.** At the time of the contract, Envirodyne Engineers, Inc., was then doing business as Westenhoff & Novick, Inc.

ous design errors. WMATA attempted, by invoking a contractual dispute resolution mechanism, to recover sums it had expended to correct the errors. While WMATA pursued the contractually-based administrative remedy, however, Hampton initiated this litigation in district court, suing WMATA for declaratory and injunctive relief. Specifically, Hampton asked for a declaration that the claim was not subject to compulsory administrative resolution and that any claim by WMATA for damages resulting from design defects was barred by the Virginia statute of limitations, Va.Code Ann. § 8.01–246(2) (1984), and the Virginia statute of repose, Va.Code Ann. § 8.01–250 (1984). WMATA filed a counterclaim, seeking the damages it originally attempted to recover under the administrative dispute resolution mechanism. The district court held that the dispute was not subject to compulsory administrative resolution under the Dispute Clause of the contract and that both the Virginia statute of limitations and statute of repose barred WMATA's claims.[2]

## I. Factual Background

WMATA was established by an interstate compact among Virginia, Maryland and the District of Columbia to provide a regional system of transportation for the Washington, D.C., metropolitan area ("WMATA Compact"). Congress consented to the WMATA Compact and adopted it for the District of Columbia. *See* The Act of November 6, 1966, Pub.L. No. 89–774, 80 Stat. 1324 (1967). The Virginia and Maryland legislatures separately adopted the WMATA Compact. *See* Va.Code Ann. § 56–530 (1986); Md. Transportation Code Ann. § 10–204 (1977).

As part of its functions, WMATA constructed and now operates the rapid rail system known as Metrorail. In March 1974, WMATA awarded Hampton the contract to design and furnish engineering services for the Alexandria facility. In February 1979, Hampton submitted design drawings to WMATA and the latter made them available to contractors for bids.[3]

In August 1979, WMATA awarded the construction contract to build the Alexandria facility to Blake Construction Company ("Blake"). Blake started work in September 1979 and substantially completed construction in April 1982. During the course of construction, the Resident Engineer for Blake informed WMATA of numerous "design-related discrepancies" in Hampton's plans. At WMATA's request, Blake corrected the design defects and WMATA attempted to recover the resulting expenditures from Hampton.[4] In April

---

**2.** WMATA argued that the dispute must be resolved through the administrative process provided for in the "Dispute Clause" of the parties' contract. The Dispute Clause states in pertinent part:

(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within thirty (30) days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to [WMATA's] Board of Directors. The decision of the Board of Directors or its duly authorized representatives for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly

erroneous as necessarily to imply bad faith, or is not supported by substantial evidence. However, in *WMATA v. Buchart–Horn, Inc.,* 886 F.2d 733, 735–36 (4th Cir.1989), we addressed this precise issue and held that a claim for damages resulting from design deficiencies did not fall within the Dispute Clause and, thus, the Board of Directors did not have jurisdiction to resolve the dispute. WMATA now acknowledges that *Buchart–Horn* is controlling precedent, and has not appealed this part of the district court's decision.

**3.** This initial release was voided in March 1979 and amended drawings were readvertised for bid in May 1979.

**4.** The claimed costs resulting from the alleged design errors were presented in general categories:

| | |
|---|---|
| Design deficiencies detected after construction | $ 331,577 |
| Design deficiencies detected prior to construction | 457,599 |

1987, WMATA's Contracting Officer contacted Hampton and requested that negotiations commence concerning payment for the costs. He submitted a draft Findings of Fact to Hampton for comment and Hampton responded by letter, disputing the proposed findings. In October 1989, the Contracting Officer issued his Final Decision, determining that Hampton owed WMATA $1,071,397 for costs incurred as a result of the alleged design deficiencies.

On November 21, 1989, Hampton filed suit in United States District Court asking for a declaration that WMATA's claim did not fall under the Dispute Clause of the contract and that the claim was barred both by Virginia's statute of limitations and statute of repose. In December 1989, WMATA filed its answer and counterclaim, seeking damages for the design defects.

On February 9, 1990, following oral argument, the district court granted Hampton's motion for summary judgment, holding that "the claim of the defendant for defective design drawings and cost changes needed to rectify design errors or omissions ... is barred by the five year statute of limitations." In an amended Order, the district court added that the claim was also barred by the "five year statute of repose." Hampton subsequently moved for Judgment on the Pleadings, asking for a definitive order that WMATA's claim was not subject to the Dispute Clause of the contract. In its Final Order, the district court granted Hampton declaratory and injunctive relief on both the timeliness and forum issues. It, of course, did not reach the merits of WMATA's claim for damages. WMATA appeals only the timeliness issue.

## II. The Virginia Statute of Limitations

■ Section 8.01–246 of the Virginia Code places a five-year limitation on any action brought pursuant to a written contract. Specifically, it states:

> Subject to the provisions of § 8.01–243 regarding injuries to person and property and of § 8.01–245 regarding the application of limitations to fiduciaries, and their bonds, actions founded upon a contract, other than actions on a judgment or decree, shall be brought within the following number of years next after the cause of action shall have accrued:
>
> .    .    .    .    .
>
> 2. In actions on any contract which is not otherwise specified and which is in writing and signed by the party to be charged thereby, or by his agent, within five years whether such writing be under seal or not[.]

However, § 8.01–231 of the Virginia Code provides that the Commonwealth of Virginia is not subject to a statute of limitations unless the limitation expressly applies to the Commonwealth.[5] Specifically, it states:

> *Commonwealth not within statute of limitations.*—No statute of limitations which shall not in express terms apply to the Commonwealth shall be deemed a bar to any proceeding by or on behalf of the same.

Va.Code Ann. § 8.01–231 (Supp.1990).

WMATA concedes that the Virginia statute of limitations requires a claim based on a written contract to be brought within five years after the cause of action has accrued. It contends, however, that as an agency and instrumentality of Virginia it has sovereign immunity that shields it from the limitations bar. It also seems to argue, albeit somewhat confusingly, that it has

| Time related costs | $ 282,221 |
|---|---|
| Total | $1,071,397 |

**5.** This section apparently codifies the common law rule that a statute of limitations does not run against the sovereign. *See Commonwealth v. Owens Corning Fiberglas Corp.,* 238 Va. 595, 599, 385 S.E.2d 865, 867 (1989) ("it has been a part of the common law from time immemorial that the statute of limitations does not run against the sovereign"); *Burns v. Board of Supervisors,* 227 Va. 354, 357, 315 S.E.2d 856, 858

(1984) (The statute "is a codification of the ancient maxim, *nullum tempus occurit regi,* that is, 'time does not run against the king.'"); *Levasser v. Washburn,* 52 Va. (11 Gratt.) 572, 576–77 (1854) ("It is a maxim of great antiquity in the English law, that no time runs against the crown.... And it may be laid down as a safe proposition, that no statute of limitations has been held to apply to suits by the crown, unless there has been an express provision including it.").

federal sovereign immunity. We need not decide, however, whether WMATA has federal sovereign immunity and whether that alone protects it from application of the statute of limitations because we conclude that as an agency and instrumentality of the Commonwealth of Virginia, WMATA is exempt from application of the statute of limitations.

■ As a general proposition, an agency of the state shares the same privileges as that of the state, including sovereign immunity. *See Beatty v. WMATA*, 860 F.2d 1117, 1126 (D.C.Cir.1988). There is no doubt that WMATA is an agency and instrumentality of the Commonwealth of Virginia. Sections 2 and 4 of the Compact provide that WMATA is an interstate agency and instrumentality of each of the signatories to the Compact. *See also WMATA v. One Parcel of Land*, 706 F.2d 1312, 1314 (4th Cir.) ("Section 4 of the Compact created WMATA as an instrumentality and agency of each of the signatory parties"), *cert. denied*, 464 U.S. 893, 104 S.Ct. 238, 78 L.Ed.2d 229 (1983); *Pepco v. State Corp. Comm'n*, 221 Va. 632, 634–35, 272 S.E.2d 214, 215–16 (1980).[6]

Hampton contends, however, and the district court agreed that WMATA did not enjoy sovereign immunity from application of the statute of limitations in the instant case because § 8.01–231 exempts only the Commonwealth from application of the statute of limitations, not its agencies or instrumentalities. The district court based that determination on its interpretation of the Virginia Supreme Court decision in *Burns v. Board of Supervisors of Stafford County*, 227 Va. 354, 315 S.E.2d 856 (1984). There, the Virginia Supreme Court considered the issue of whether an agency of a Virginia county was included within the exemption of the predecessor statute to § 8.01–231. At that time, the section read:

No statute of limitations which shall not in express terms apply to the Commonwealth shall be deemed a bar to any proceeding by or on behalf of the same. This section shall not, however, apply to

agencies of the Commonwealth incorporated for charitable or educational purposes.

The first sentence was identical to that of the current statute. The second sentence, however, contained a qualification that state agencies incorporated for charitable and educational purposes were not exempt. The *Burns* court held that while state agencies were entitled to the protection of § 8.01–231, county entities were not. The court noted, in dictum, that by excluding two state agencies, the legislature intended to include the remaining state agencies:

Had the provision [§ 8–35, the predecessor to § 8.01–231] concluded with the first sentence, its meaning would have been clear for, by its terms, only the Commonwealth itself would be exempt from the bar of a statute of limitations, unless otherwise expressly stated. The second sentence is the source of additional meaning and is thus central to this appeal.

The second sentence excludes two types of state agencies from the saving grace of the provision: state agencies incorporated for charitable purposes and state agencies incorporated for educational purposes. Because the legislature specifically excluded these two categories of state agencies, it appears that it intended to include other state agencies.

*Id.* at 357, 315 S.E.2d at 858. In 1988, the Virginia legislature amended § 8.01–231 to delete the second sentence pertaining to charitable and educational agencies. *See* 1988 Va. Acts 681. The district court concluded that "the deletion in 1988 of the exception for charitable and educational agencies rendered that statute applicable only to the Commonwealth itself." However, the legislative history of the 1988 amendment persuades us that rather than intending to exclude all agencies from the purview of that section, the Virginia legislature intended to include all of them and, thus, maximize the ability of the state to collect debts.

---

**6.** Persuasively, the Commonwealth of Virginia submitted a brief *amicus curiae*, stressing that WMATA was an agency and instrumentality of the Commonwealth of Virginia.

In its Appropriations Act of 1987, the Virginia General Assembly directed the Department of Planning and Budget to

> conduct a study of accounts receivable due the Commonwealth. The study shall examine current policies and approaches and recommend appropriate changes to maximize the collection of receivables. The study shall be submitted to the Governor and the Chairmen of the House Appropriations and Senate Finance Committees by November 15, 1987.

1987 Va. Acts 1448. The resulting report included a number of recommendations, one of which was to amend § 8.01–231:

> As written now, § 8.01–231 establishes a statute of limitation for collecting debts owed to educational and charitable organizations. The current limitation is three years for an oral contract and five years for a written contract. There does not appear to be any justifiable reason why debts to these organizations should be treated any differently than debts to other entities. This statute of limitation should be eliminated.

*A Review of the Commonwealth's Management and Collection of Accounts Receivable*, at II–11 (Virginia Department of Planning and Budget, March 1988).

Thereafter, the Virginia legislature adopted comprehensive legislation to improve collection of debts by the state. *See* Ch. 544, 1988 Va.Acts 678. Part of this legislation eliminated the second sentence of § 8.01–231, having the effect of exempting all state agencies from application of the statute of limitations.

We are persuaded, despite the dictum in *Burns*, that if the Supreme Court of Virginia were now to interpret § 8.01–231, it would hold that this language applies to agencies of the Commonwealth as well as to the Commonwealth itself. We, therefore, conclude that the district court erred in holding otherwise.

## III. Statute of Repose

■ Section 8.01–250 of the Virginia Code provides, in relevant part:

> *Limitation on certain actions for damages arising out of defective or unsafe condition of improvements to real property.*—No action to recover for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained as a result of such injury, shall be brought against any person performing or furnishing the design, planning, surveying, supervision of construction, or construction of such improvement to real property more than five years after the performance or furnishing of such services and construction. . . .

Blake substantially completed building the Alexandria facility in April 1982 and the facility was "placed in use for its intended purpose" in November 1982. Consequently, the district court held that WMATA's action, filed in November 1989, was barred by the five year statute of repose.

In support of the district court's holding, Hampton argues that sovereign immunity does not protect WMATA from application of § 8.01–250 because a statute of repose differs from a statute of limitations. While some courts treat statutes of limitations and statutes of repose similarly,[7] other courts recognize important distinctions between the two. The Supreme Court of Virginia falls in the latter group. In *Owens–Corning Fiberglas*, the court distinguished between the two limitations, stating that a statute of limitations bars only the remedy, whereas a statute of repose both extinguishes the right and bars the remedy:

> unlike a "pure" statute of limitations that merely bars the maintenance of a remedy, the statute of repose bars the

---

7. *See District of Columbia v. Owens–Corning Fiberglas Corp.*, 572 A.2d 394, 401 (D.C.1989) ("[i]t is well settled that sovereigns enjoy a common-law immunity from the operation of statutes of limitations *and* repose") (emphasis added), *cert.* denied, — U.S. —, 111 S.Ct. 213, 112 L.Ed.2d 173 (1990); *Wesley Theological Seminary v. United States Gypsum Co.*, 876 F.2d 119, 122–23 (D.C.Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990).

remedy *and* extinguishes the underlying cause of action. The exemption from suit accorded those named in the statute is a substantive right protected by the due process clause of the Constitution of Virginia, Article I, Section 11.

*Owens–Corning Fiberglas,* 238 Va. at 598, 385 S.E.2d at 867 (emphasis in original). As a result, the court in *Owens–Corning Fiberglas* concluded that the common law rule of sovereign immunity could not prevail against the "constitutionally protected 'substantive rights of repose.' " *Id.* at 600, 385 S.E.2d at 868.

Unfortunately for Hampton, however, it gains no solace from *Owens–Corning Fiberglas* because § 8.01–250 does not apply to actions such as this. The underlying controversy here concerns a contract between Hampton and WMATA and the claim that Hampton failed in its performance under that contract. WMATA's claim is grounded primarily in Article 7 of the contract, entitled "Responsibility for Work." [8] Section (a) requires "professional and technical accuracy of all designs, drawings, specifications...." Section (b) provides that Hampton "shall likewise be liable to the Authority for all costs to it of any kind caused by or resulting from the Contractor's negligent performance of this contract." Finally, section (c) states that "[t]he rights and remedies of the Authority provided in this clause are in addition to any other rights or remedies of the Authority provided by law or under this contract."

WMATA asserts three causes of action in its counterclaim. Count I is for breach of contract; Count II is for negligence; and Count III is for breach of warranties. Despite Hampton's argument that the claims "sound" in tort because they arise out of alleged negligence, we are persuaded by controlling Virginia precedent that this is a contract action. In *Oleyar v. Kerr,* 217 Va. 88, 225 S.E.2d 398 (1976), the Virginia Supreme Court held that a suit against an attorney for his negligence in conducting a title search was an action in contract. In so holding, the court explained the distinction between actions arising in contract and actions arising in tort, quoting from *Burks Pleading and Practice,* § 234 at 406 (4th Ed., 1952), which stated:

The following distinction, between actions for tort or contract is made by the English Court of Appeals: "The distinction is this: If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort."

*Oleyar,* 217 Va. at 90, 225 S.E.2d at 399–400. In *Comptroller of Virginia v. King,* 217 Va. 751, 232 S.E.2d 895 (1977), the Supreme Court of Virginia characterized a suit against architects for negligent design of a building performed under a contract as an action in contract. There, the parties disputed which time limitation should apply to the Virginia Military Institute's claim against the architects—the statute of limitations for an action based on a written contract or the statute of repose for negligent injury to property. The Virginia Supreme Court held that, though the suit may

---

**8.** Article 7 states in full:

*RESPONSIBIL[I]TY FOR WORK*

(a) Notwithstanding any review, approval, acceptance or payment by the Authority, the Contractor shall be responsible for the professional and technical accuracy of all designs, drawings, specifications and other work or materials furnished under this contract, and shall without additional cost or fee correct or revise any errors or deficiencies in its performance.

(b) The Contractor shall likewise be liable to the Authority for all costs to it of any kind caused by or resulting from the Contractor's negligent performance of this contract.

(c) The rights and remedies of the Authority provided in this clause are in addition to any other rights or remedies provided by law or under this contract.

have sounded in tort, it was based in contract. *See id.* at 758–59, 232 S.E.2d at 899–900. Our decision in *Fidelity and Deposit Co. v. Bristol Steel & Iron Works, Inc.,* 722 F.2d 1160, 1162 (4th Cir.1983), then leads us to our ultimate conclusion. There, we held that § 8.01–250 applies only to tort actions, not to contract actions. Accordingly, we conclude that since this action arises out of contract, not tort, it is outside the scope of § 8.01–250.

The judgment of the district court is, therefore, reversed and remanded to the district court for action consistent with the views expressed in this opinion.

REVERSED AND REMANDED.