**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHRISTOPHER T. LIZZI,

*Plaintiff-Appellee,*

v.

ROBERT ALEXANDER; CHARLES
THOMAS; PHILLIP WALLACE; ANTHONY
JOHNSON; AL MCCOY; DENNISE
KURTZ,

*Defendants-Appellants,*

and

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY; JACK BYRD;
MICHAEL KURTZ,

*Defendants.*

UNITED STATES OF AMERICA,

*Movant.*

No. 00-2103

CHRISTOPHER T. LIZZI,
                    *Plaintiff-Appellant,*

                    v.

ROBERT ALEXANDER; CHARLES
THOMAS; PHILLIP WALLACE; ANTHONY
JOHNSON; AL MCCOY; DENNISE
KURTZ; WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY; JACK                      No. 00-2104
BYRD,
                    *Defendants-Appellees,*

                    and

MICHAEL KURTZ,
                              *Defendant.*

UNITED STATES OF AMERICA,
                              *Movant.*

CHRISTOPHER T. LIZZI,
            *Plaintiff-Appellee,*

                v.

ROBERT ALEXANDER; CHARLES
THOMAS; PHILLIP WALLACE; ANTHONY
JOHNSON; AL MCCOY; DENNISE
KURTZ,
            *Defendants-Appellants,*                    No. 00-2126

            and

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY; JACK BYRD;
MICHAEL KURTZ,
                    *Defendants.*

UNITED STATES OF AMERICA,
                    *Movant.*

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-98-2660-DKC)

Argued: April 4, 2001

Decided: June 20, 2001

Before WILKINSON, Chief Judge, and LUTTIG and
GREGORY, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Chief Judge Wilkinson wrote the opinion, in which Judge Luttig and Judge Gregory joined.

**COUNSEL**

**ARGUED:** Gerard J. Stief, Associate General Counsel, WASHING-
TON METROPOLITAN AREA TRANSIT AUTHORITY, Washing-
ton, D.C., for Appellants. Paul Francis Evelius, WRIGHT,
CONSTABLE & SKEEN, L.L.P., Baltimore, Maryland, for Appellee.
**ON BRIEF:** Cheryl C. Burke, General Counsel, Robert J. Kniaz,
Deputy General Counsel, Sonia A. Bacchus, Assistant General Coun-
sel, WASHINGTON METROPOLITAN AREA TRANSIT
AUTHORITY, Washington, D.C., for Appellants.

---

**OPINION**

WILKINSON, Chief Judge:

In this case, we must decide whether the Eleventh Amendment
shields the Washington Metropolitan Area Transit Authority
(WMATA), an agency created by interstate compact, from plaintiff
Christopher Lizzi's assertions that the agency violated the Family and
Medical Leave Act (FMLA), 29 U.S.C. §§ 2601 et seq. (1994). We
also must decide the related question of whether sovereign immunity
bars Lizzi's allegation that several individual employees of WMATA
violated the FMLA and are thus subject to personal liability for the
alleged damages. The district court held that the Eleventh Amend-
ment bars Lizzi's claims against WMATA, but that the FMLA per-
mits Lizzi to bring an action against the employees of WMATA in
their individual capacities. Because sovereign immunity extends to
WMATA, and because the claims against the WMATA employees
are in reality claims against the agency itself, we affirm in part,
reverse in part, and remand with directions to dismiss the action.

I.

A.

Plaintiff Christopher Lizzi worked as a bus wheelchair lift
mechanic for WMATA until September, 1997. WMATA fired Lizzi
for allegedly combining sick days and vacation leave to miss work for

the entire summer. WMATA maintained that Lizzi fabricated his sick leave and did not submit to a medical exam, as required by the agency's policies. Lizzi contested this, and filed suit under the FMLA alleging that WMATA terminated him in violation of the Act.

Lizzi sued WMATA as well as seven individual supervisors at WMATA. The complaint stated that "Plaintiff Christopher T. Lizzi sues defendants Washington Metropolitan Area Transit Authority, Robert Alexander, Charles Thomas, Anthony Johnson, Michael Kurtz, Phillip Wallace, Al McCoy, and Jack Byrd." The complaint further declared that the individual defendants "have, at all relevant times, been employees of WMATA." The complaint also noted the supervisory positions of some of these defendants. McCoy and Byrd were Garage Shift Supervisors; Johnson oversaw the Garage Shift Supervisors; Alexander was WMATA's Absenteeism Supervisor; and Kurtz was WMATA's Bus Maintenance Superintendent. The complaint did not specify the positions of either Thomas or Wallace. Lizzi asked for, *inter alia*, reinstatement, back pay, damages, and an order prohibiting the defendants from violating the FMLA.

The district court granted summary judgment for WMATA on Eleventh Amendment grounds, but kept the individual defendants in the case. The lower court held that the WMATA compact does not waive the agency's Eleventh Amendment immunity, and that the FMLA is not a valid exercise of Congress' Fourteenth Amendment, § 5 power. But the court also held that the FMLA specifically defines "employer" to include supervisors, and thus the plain language of the FMLA authorizes suits against the individual employees in their individual capacities. The district court certified for interlocutory appeal the issues of WMATA's waiver of immunity and the liability of the individual defendants under the FMLA. WMATA appeals the decision to keep the individual supervisors in the case, and Lizzi cross-appeals the district court's decision that the compact does not waive WMATA's sovereign immunity.

B.

WMATA is an interstate compact agency and instrumentality of Maryland, Virginia, and the District of Columbia. Its purpose is to ensure the proper functioning and operation of a mass transit system

in the Washington, D.C. metropolitan area. *See Morris v. WMATA*, 781 F.2d 218, 219 (D.C. Cir. 1986). WMATA receives approximately 44% of its budget from the signatory states. The WMATA compact was approved by Congress in 1966. *See* Washington Metropolitan Area Transit Authority Compact, Pub. L. No. 89-774, 80 Stat. 1324 (1966).

Three sections of the compact are at the heart of this case. First, § 12 states that WMATA may "[s]ue and be sued." *Id.* at 1328. Second, § 80 declares that WMATA

> shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent [sic] committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function. The exclusive remedy for such breach of contracts and torts for which the Authority shall be liable, as herein provided, shall be by suit against the Authority. Nothing contained in this title shall be construed as a waiver by the District of Columbia, Maryland, Virginia, and the counties and cities within the zone of any immunity from suit.

*Id.* at 1350. Third, § 81 says in pertinent part:

> The United States District Courts shall have original jurisdiction, concurrent with the Courts of Maryland and Virginia, of all actions brought by or against [WMATA] and to enforce subpoenas issued under [this compact]. Any such action initiated in a State Court shall be removable to the appropriate United States District Court.

*Id.*

## II.

### A.

We note at the outset that WMATA possesses Eleventh Amendment immunity. The signatories of the compact intended to confer

Eleventh Amendment immunity on WMATA. *See Delon Hampton & Assoc. v. WMATA*, 943 F.2d 355, 359 (4th Cir. 1991). Further, both this circuit and the D.C. Circuit have held that Eleventh Amendment immunity may attach to WMATA's actions. *See id.* at 359; *Morris*, 781 F.2d at 220. WMATA is a state agency, subject to all the benefits and liabilities of a state itself, including sovereign immunity. *See Morris*, 781 F.2d at 219-20. It does not matter that WMATA was created by interstate compact, as opposed to being an agency of one state alone. *See Delon Hampton*, 943 F.2d at 359; *Jones v. WMATA*, 205 F.3d 428, 432 (D.C. Cir. 2000).

In *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994), the Supreme Court held that the Port Authority Trans-Hudson, an interstate compact entity, could not claim sovereign immunity. *See Hess*, 513 U.S. at 52-53. But the Court in *Hess* relied heavily on the fact that the Port Authority did not receive any funding from any state. Instead, it was a "self-sustaining" agency. *Id.* at 50. Indeed, the Court in *Hess* specifically distinguished the Port Authority from WMATA because WMATA was not self-sufficient. *Id.* at 49-50. Thus, the conferral of Eleventh Amendment immunity on WMATA "is compatible" with the holding in *Hess*. *Id.* at 50 n.20.

B.

Lizzi argues that under *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299 (1990), §§ 12 and 81 of the WMATA Compact read together effect a waiver of the agency's Eleventh Amendment immunity.

In *Feeney*, the Supreme Court ruled that an interstate compact entity, the Port Authority Trans-Hudson, had given its consent to suit in federal court. *See* 495 U.S. at 308-09. The statutory consent to suit provision in *Feeney* proclaimed that the states gave "consent to suits, actions, or proceedings of any form or nature at law, in equity or otherwise . . . against the Port of New York Authority." *Id.* at 306 (internal quotations omitted) (alteration in original). This provision standing alone, although "broadly framed," may have reflected "only a State's consent to suit in its own courts." *Id.* The Court thus looked at the venue provision of the compact, which stated that venue "shall be laid within a county or judicial district, established by one of said

States or by the United States . . . ." *Id.* at 307 (internal quotations omitted). Since the venue provision explicitly referred to federal courts, the Court held that the statutory consent to suit provision must encompass both federal and state courts. *See id.* at 307-09.

Lizzi argues that the similar provisions in the WMATA compact also effect a waiver of Eleventh Amendment immunity. Section 12 states that WMATA may "[s]ue and be sued." 80 Stat. at 1328. And § 81 makes clear that venue is proper in federal court. Thus, Lizzi maintains that under the reasoning of *Feeney*, WMATA must have waived its Eleventh Amendment immunity.

We disagree. Even were we to assume that WMATA's consent to suit provision is coextensive with the broader consent to suit provision in *Feeney*, Lizzi's argument has one fatal flaw: § 80 of the WMATA compact "specifically and expressly delineates the scope of WMATA's consent to be sued." *Morris*, 781 F.2d at 222 n.3. *Feeney* is not applicable here because it did not confront the situation in this case — a compact containing another clause specifically addressing the extent to which an agency waives its sovereign immunity. *Morris* involved a suit brought by an officer contending that WMATA discriminatorily discharged him. The *Morris* court disallowed the plaintiff's suit, even though the case arose under federal law, because § 80 did not waive WMATA's Eleventh Amendment immunity. *See id.* at 219-21. Since *Morris*, the District of Columbia Circuit has consistently held that the WMATA compact does not waive the agency's Eleventh Amendment immunity. *See, e.g., Jones*, 205 F.3d at 432 (suit brought under the ADEA dismissed due to WMATA's Eleventh Amendment immunity); *Beebe v. WMATA*, 129 F.3d 1283, 1285-86 (D.C. Cir. 1997) (suit alleging, *inter alia*, constructive discharge dismissed due to WMATA's sovereign immunity); *Souders v. WMATA*, 48 F.3d 546, 551 (D.C. Cir. 1995) (nuisance suit dismissed due to WMATA's Eleventh Amendment immunity); *Sanders v. WMATA*, 819 F.2d 1151, 1153-56 (D.C. Cir. 1987) (suit alleging negligent termination and violation of federal statute dismissed due to WMATA's sovereign immunity).

Lizzi argues in response to this multitude of cases that the D.C. Circuit is wrong, and that § 80 is applicable only to claims arising under state law. We agree with the *Morris* line of cases, however.

Any waiver of Eleventh Amendment immunity must be clear and unequivocal. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The text of § 80 indicates that the WMATA compact provides only for a limited waiver of sovereign immunity. The compact explicitly waives WMATA's sovereign immunity for breaches of contract and for torts "committed in the conduct of any proprietary function." 80 Stat. at 1350. There is no contention that the exercise of authority at issue in this suit was in any sense a tort or a contract "committed in the conduct of any proprietary function." Rather, hiring, training, and supervision practices are governmental functions. *See Beebe*, 129 F.3d at 1287. This case therefore does not fit within the scope of WMATA's limited waiver of sovereign immunity.

The compact evinces an intent that the agency does not waive its immunity in all *other* cases. It is thus unavailing to argue that §§ 12 and 81 effected a broad waiver of Eleventh Amendment immunity when § 80 makes so clear the limited nature of any such waiver. Reliance solely upon the sue and be sued clause and the venue clause, as Lizzi urges us to do, "would be particularly inappropriate" in this case because "another section of the Compact, § 80," delineates the entire scope of WMATA's waiver of its sovereign immunity. *Morris*, 781 F.2d at 222 n.3. Lizzi cannot use the combination of §§ 12 and 81 to create a waiver that § 80 itself does not provide. Indeed, "it is a commonplace of statutory construction that the specific governs the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). Finally, we agree with the D.C. Circuit that nothing in the WMATA compact purports to waive the agency's Eleventh Amendment immunity in all cases under federal law. *See Jones*, 205 F.3d at 430; *Morris*, 781 F.2d at 221. Our reading of the compact is not only faithful to its language; it also renders circuit law consistent in the two federal circuits most likely to hear cases in which WMATA is a party.

## C.

The only remaining reason why WMATA would be subject to suit is if the FMLA validly abrogates the agency's Eleventh Amendment immunity. The district court ruled that the FMLA did not abrogate WMATA's Eleventh Amendment immunity. We agree.

The Supreme Court has enunciated a two-part test for determining whether an act of Congress abrogates a state's Eleventh Amendment

immunity. First, Congress must unequivocally declare an intent to abrogate. Second, Congress must act pursuant to a valid exercise of its power. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). We assume for purposes of this decision that Congress has declared its unequivocal intent to abrogate. The FMLA states that an action may be maintained "against any employer (including a public agency) in any Federal or State court of competent jurisdiction. . . ." 29 U.S.C. § 2617(a)(2). *Cf. Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73-74 (2000) (holding that identical language in the Age Discrimination in Employment Act constitutes an unmistakably clear attempt by Congress to abrogate a state's Eleventh Amendment immunity).

Congress must also have the proper constitutional authority to abrogate, however. Since *Seminole Tribe*, the Court has made clear that Congress cannot abrogate Eleventh Amendment immunity using its Article I powers. *See, e.g., Board of Tr. of the Univ. of Ala. v. Garrett*, 121 S. Ct. 955, 962 (2001) ("Congress may not, of course, base its abrogation of the States' Eleventh Amendment immunity upon the powers enumerated in Article I."); *id.* (collecting cases since *Seminole Tribe*); *see also South Carolina State Ports Auth. v. Federal Mar. Comm'n*, 243 F.3d 165, 168 (4th Cir. 2001). Only under its Fourteenth Amendment, § 5 power can Congress validly abrogate a state's immunity from private suit. *See Garrett*, 121 S. Ct. at 962; *South Carolina Ports*, 243 F.3d at 177.

Legislation properly enacted under § 5 must be congruent and proportional to the Fourteenth Amendment injury being remedied. *City of Boerne v. Flores*, 521 U.S. 507, 520 (1997); *Kimel*, 528 U.S. at 81; *Garrett*, 121 S. Ct. at 963. The Supreme Court has held that both the Age Discrimination in Employment Act and the Americans With Disabilities Act were not validly enacted under Congress' § 5 power because "the remedy imposed by Congress" was not "congruent and proportional to the targeted violation." *Garrett*, 121 S. Ct. at 967-68 (ADA); *accord Kimel*, 528 U.S. at 82-83 (ADEA).

Thus, the issue here is whether the FMLA is congruent and proportional to the identified Fourteenth Amendment violation — employment discrimination on the basis of sex. The statute identifies gender discrimination as the constitutional harm to be remedied by the FMLA. The FMLA states that its purpose is to "minimize[ ] the

potential for employment discrimination on the basis of sex by ensuring generally that leave is available for eligible medical reasons (including maternity-related disability) and for compelling family reasons, on a gender neutral basis" and in a manner "consistent with the Equal Protection Clause of the Fourteenth Amendment." 29 U.S.C. § 2601(b)(4); *see also Chittister v. Department of Cmty. and Econ. Dev.*, 226 F.3d 223, 228 (3d Cir. 2000). In making this finding of purpose, Congress did not identify, as it is required to do, any pattern of gender discrimination by the states with respect to the granting of employment leave for the purpose of providing family or medical care. *See Garrett*, 121 S. Ct. at 964-65. As the Third Circuit has stated, "Notably absent is any finding concerning the existence, much less the prevalence, in public employment of personal sick leave practices that amounted to intentional gender discrimination in violation of the Equal Protection Clause." *Chittister*, 226 F.3d at 228-29.

Moreover, the FMLA is simply not narrowly tailored to redress the asserted Fourteenth Amendment harm of gender discrimination. While Congress has broad latitude to act, it does not have the constitutional power to pass such a sweeping statute on the basis of the purported Fourteenth Amendment violation. The difficulty is that the FMLA bestows on private parties a broad-ranging substantive entitlement to sue states for a range of personnel practices without any finding that the states were culpable of an Equal Protection violation to begin with. That the FMLA sweeps far beyond the redress of gender discrimination is evident in the breadth of the entitlement to subject a state to suit. Instead of attempting to remedy the identified violation, Congress attempted to redefine the right. As the district court noted, the FMLA "exceeds Congress's power under the Fourteenth Amendment by attempting to define specifically what equal protection means rather than merely remedy an existing constitutional violation."

The FMLA "does much more than require nondiscriminatory sick leave practices; it creates a substantive entitlement to sick leave." *Chittister*, 226 F.3d at 229. The Act imposes on the states a federally devised standard entitling employees to "12 workweeks of leave during any 12-month period." 29 U.S.C. § 2612(a)(1). The Act also allows any person to subject a state to private suit for violating the statute. *Id.* § 2617(a)(2). The Fourteenth Amendment does not allow Congress to prescribe a privately enforceable guarantee to all state

employees of at least twelve weeks of leave per year. *See, e.g., Chittister*, 226 F.3d at 228-29; *Garrett v. University of Ala. at Birmingham Bd. of Tr.*, 193 F.3d 1214, 1219 (11th Cir. 1999), *rev'd on other grounds*, 121 S. Ct. at 968.

In sum, the substantive requirements of the FMLA are "'so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior.'" *Kimel*, 528 U.S. at 82 (quoting *City of Boerne*, 521 U.S. at 532). Indeed, every circuit to examine this issue has identified this fundamental lack of proportionality as a main reason why the FMLA is not a valid abrogation of a state's Eleventh Amendment immunity from suit. *See, e.g., Townsel v. Missouri*, 233 F.3d 1094, 1095 (8th Cir. 2000); *Chittister*, 226 F.3d at 229 (legislative scheme not "tailored to preventing any [constitutional] harm"); *Kazmier v. Widmann*, 225 F.3d 519, 526 (5th Cir. 2000) ("Broad, prophylactic legislation must be congruent with and proportional to *actual, identified* constitutional violations by the States."); *Sims v. University of Cincinnati*, 219 F.3d 559, 566 (6th Cir. 2000); *Hale v. Mann*, 219 F.3d 61, 69 (2d Cir. 2000) ("There is no evidence that this conferment of federally protected leave is tailored to remedy sex-based employment discrimination."); *Garrett*, 193 F.3d at 1219. We agree with all of our sister circuits. The FMLA does not validly abrogate a state's Eleventh Amendment immunity from suit.

## III.

WMATA and the individual defendants appeal the district court's determination that the FMLA allows suits against individual supervisors in their individual capacities. In support of this result, the district court pointed to the fact that the FMLA's definition of "employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). WMATA argues preliminarily, however, that the individual defendants in essence have been sued for damages in their official capacities rather than their individual capacities.[1]

---

[1]In view of our resolution of this issue, we do not address the question of whether, in an action against a private employer, an individual supervisor is subject to personal liability for violating the FMLA.

"Only States and state officers acting in their official capacity are immune from suits for damages in federal court." *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. ___, No. 99-1848, slip op. at 10 n.10 (May 29, 2001) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)). The Supreme Court has declared that the "Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984) (quoting *Ford Motor Co. v. Department of Treas. of Ind.*, 323 U.S. 459, 464 (1945)). The Supreme Court has also made clear that a suit for damages against individual officers in their official capacities is treated like a suit against the state itself. *See, e.g., Pennhurst*, 465 U.S. at 101; *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997). Thus, if Lizzi has sued the individual supervisors in their official capacities, the employees would be entitled to the same Eleventh Amendment immunity that WMATA itself retains.

Here, Lizzi's complaint makes clear that the state is the real party in interest. Lizzi's complaint named seven individuals as well as WMATA. The complaint, however, never stated whether the individuals were being sued in their official or individual capacities. Moreover, the allegations in the complaint recounted how WMATA *as an agency* decided to fire Lizzi. Any actions of the individual defendants were tied inextricably to their official duties. For example, the complaint recounted that "WMATA told [Lizzi]" that he was under investigation after "defendant Alexander, WMATA's Absenteeism Supervisor, recommended in writing to defendant Kurtz, WMATA's Bus Maintenance Superintendent, that plaintiff be terminated." The complaint made no showing of any ultra vires action taken by any individual employee. And a conclusory allegation that the "defendants" were motivated by "spite" and "ill will" is not enough, standing alone, to maintain an FMLA action against these supervisors in their individual capacities.

Indeed, even if Lizzi had actually used the phrase "individual capacity," his complaint could not stand. In *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534 (1985), the Supreme Court emphasized that the mere incantation of the term "individual capacity" is not enough to transform an official capacity action into an individual capacity action. *See* 475 U.S. at 543. Here, Lizzi's complaint is

weaker than *Bender*'s because the complaint does not even state that the defendants are being sued in their individual capacities. Rather, the complaint used the defendants' work address as the address of record and spoke of the individual defendants by name only passingly and in relation to the jobs that they performed at WMATA. The other court to examine the individual-capacity question with regard to FMLA suits against state employees had no difficulty in holding that the real party in interest in these lawsuits is the state, not the individual defendants. *See Kazmier*, 225 F.3d at 533 n.65.

Lizzi argues, however, that *Hafer v. Melo*, 502 U.S. 21 (1991), requires that the claims against the individual supervisors should be treated as an individual-capacity suit. In *Hafer*, the Court held that 42 U.S.C. § 1983 permits individual capacity suits against state officers for damages arising from official acts. *See Hafer*, 502 U.S. at 23. We think, however, that *Hafer* is inapposite. *Hafer* was based on "the broad language of § 1983." *Id.* at 28. Unlike § 1983, the FMLA is not focused against those who carry the "badge of authority of a State." *Hafer*, 502 U.S. at 28 (internal quotations omitted). Whereas § 1983 is intended as a broad enforcement vehicle to bring suit against state officials for violations of all other federal statutory and constitutional rights, the FMLA is focused on creating a set of statutory entitlements in its own right. *See, e.g.,* 29 U.S.C. § 2612(a). Moreover, the text of the FMLA does not contain the well established system of immunities which § 1983 defendants can assert.[2]

Other considerations militate against interpreting the FMLA to hold individual state employees personally liable for official acts. To hold that individual supervisors, as "employers," may be sued under the statute while also holding that the Constitution prohibits the state

---

[2]The issue of whether the FMLA's remedial scheme is so comprehensive that it preempts the use of § 1983 actions is of course not before us. *See, e.g., Blessing v. Freestone*, 520 U.S. 329, 341 (1997) (Congress may forbid recourse to § 1983 by, *inter alia*, "creating a comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983."); *Kilvitis v. County of Luzerne*, 52 F. Supp.2d 403, 419 (M.D. Pa. 1999) (The FMLA provides "comprehensive remedial measures that evinces Congress' intent to foreclose the use of a § 1983 action.").

itself from being sued would undermine the Supreme Court's decisions in *Garrett*, *Kimel*, and *Seminole Tribe*. Plaintiffs like Lizzi would easily be able to evade the Eleventh Amendment prohibition against suing a state merely by naming the individual supervisor as the employer. We refuse to create such an anomaly. The state would still suffer the indignity of having each discrete decision regarding personnel or organizational matters subject to second-guessing by a federal court. "The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleadings." *Coeur d'Alene*, 521 U.S. at 270.

A rule permitting such individual liability would do nothing more than "adhere to an empty formalism and [would] undermine the principle, reaffirmed . . . in *Seminole Tribe*, that Eleventh Amendment immunity represents a real limitation on a federal court's federal-question jurisdiction." *Id.* Because WMATA enjoys Eleventh Amendment immunity for claims brought under the FMLA, the individual supervisors under the FMLA are protected by that same immunity. *See Beebe*, 129 F.3d at 1288-89 (individual supervisors of WMATA have immunity for alleged wrongful termination of employee). WMATA's Eleventh Amendment immunity transfers to the supervisors because the individuals were sued in their official capacities for their official acts.

IV.

The WMATA compact does not waive the agency's Eleventh Amendment immunity from suit. And the FMLA does not validly abrogate a state's Eleventh Amendment immunity. Consequently, Lizzi's claims against WMATA must be dismissed for lack of subject matter jurisdiction. Similarly, Lizzi's claims against the individual supervisors at WMATA must be dismissed as well because these claims were in reality an action against the agency itself. The FMLA does not permit a plaintiff to evade the strictures of sovereign immunity by suing the individual defendants as the employer rather than the state. For the foregoing reasons, the judgment of the district court is affirmed in part, reversed in part, and remanded with directions to dismiss it.

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED*