# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3899

_____

United States of America, ex rel. *
Gaudineer & Comito, L.L.P.,   *
              *
  Plaintiff-Appellant,   *
              * Appeal from the United States
  v.           * District Court for the Southern
              * District of Iowa.
State of Iowa, Iowa Department *
of Human Services;     *
              *
  Defendants,     *
              *
Gary Gesaman;      *
              *
  Defendant-Appellee   *
              *
Carol Ann Martin; Lori Ledger; First *
Resources Corporation; Alise Palmer; *
Rachelle Coloson La Master;  *
Independent Case Management, Inc.; *
Iowa Foundation for Medical Care, *
              *
  Defendants.     *

_____

Submitted: May 14, 2001
Filed: October 19, 2001

_____

Before LOKEN, J. GIBSON, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Gaudineer & Comito, L.L.P., a qui tam relator, brought this action under the False Claims Act against Iowa, the Iowa Department of Human Services (DHS), Gary Gesaman, an employee of DHS and the director of a state program which receives Medicaid funding, and other individuals and organizations which implement the state program. After the Supreme Court issued its decision in Vermont Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765 (2000), relator voluntarily dismissed all of its claims except that asserted against Gesaman in his official capacity. It also moved for leave to amend its complaint to assert a claim against Gesaman in his individual capacity. The district court[1] dismissed the action and denied the motion for leave to amend. Relator appeals, and we affirm.

Iowa received federal funding through DHS for a Medicaid program called the Home and Community Based Services Waiver. The waiver program allowed an individual with a developmental disability requiring intermediate level care to receive Medicaid funding for home and community based services rather than obtaining them in an institution. DHS promulgated and published eligibility rules for each year the waiver program was in operation. The Iowa rules defined "mental retardation" and "intermediate care facility." See IOWA ADMIN. CODE 441-83.60. The Iowa regulations were consistent with federal law, and the United States Department of Health and Human Services and Iowa entered into a three year funding agreement for the waiver program in 1992 and a five year agreement in 1995. The program was administered by Gary Gesaman.

Relator sued Iowa, DHS, Gary Gesaman in his official capacity, and other parties for violating the False Claims Act (FCA), 31 U.S.C. § 3729. The FCA allows

---

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

a private party, like the relator in this case, to bring a qui tam action on behalf of the United States alleging submission of a fraudulent claim to the government. A relator may recover damages and attorneys fees if it is successful, but it is required to deliver a copy of its complaint to the United States which has the right to intervene if it wants to pursue the claim. The United States has declined to intervene in this case.

The allegations in the complaint were based on information acquired by Carlton G. Salmons, one of the attorneys in relator law firm, while he was representing Keokuk County, Iowa in a state civil proceeding in which a key issue was whether an individual was mentally retarded. The federal district court abstained from hearing relator's claims until the state case had been concluded.

In the original complaint in this case relator sued the state, DHS, and Gesaman in his official capacity, alleging that they had defrauded the United States and inappropriately spent Medicaid funds. Relator alleged that DHS and Gesaman had disregarded published rules and that "Iowa, DHS, and Gary Gesaman ha[d] operated the [waiver] program . . . allowing eligibility to those who were not mentally retarded." In respect to its claims against Gesaman in his official capacity, it alleged that contrary to DHS regulations, "[he] decided that between March, 1992 and August 1993 persons would be eligible [for the waiver program] . . . with IQs of 78 or less," and after August 1993 with IQ's of 75 or less. Relator claimed that Gesaman, acting on behalf of the state and DHS, allowed person "with IQs of between 70 and 78 [to participate] knowing there would be an exponential increase in the numbers of persons eligible." Relator asserted that "Iowa, DHS or Gary Gesaman [did not] disclose or inform the United States Department of Health and Human Services" about this aspect of the program. Relator also claimed that the individual in the Keokuk County case should not have been eligible for the program but had received federal funding. Relator sought triple damages, a civil penalty of up to $10,000 for each violation, costs, and attorney fees.

The defendants filed motions to dismiss on the basis that relator's action was not authorized by the FCA, that it was barred by the Eleventh Amendment, and that Salmons was not the original source of the information. The district court denied the motions, and discovery was initiated. Then the Supreme Court issued its decision in Stevens, 529 U.S. at 788, holding that states and state agencies were not "persons" subject to liability under the FCA. There was thus no longer a basis to sue them under the FCA, and relator voluntarily dismissed its claims except for that against Gesaman in his official capacity. Relator also moved to amend to assert a claim against Gesaman in his individual capacity.

Relator continued to maintain that it could sue Gesaman in his official capacity even after Stevens and also submitted a proposed amended complaint in support of its motion to amend. The proposed pleading, alleging a claim against Gesaman in his individual capacity, was almost identical to the original allegations against the state, DHS, and Gesaman in his official capacity. Relator merely eliminated Iowa and DHS from the allegations that published rules had been disregarded and that the waiver program had allowed "eligibility to those who were not mentally retarded" and now alleged them only against Gesaman. Relator again alleged that "Gesaman decided that between March, 1992 and August 1993 persons would be eligible [for the waiver program] . . . with IQs of 78 or less," and after August 1993 with IQ's of 75 or less and that Gesaman operated the program knowing there would be an increase in eligible persons. Relator now left out its earlier allegation that Gesaman was acting "for the Defendants State and DHS." The allegations in the proposed complaint were directed against Gesaman alone, but no new facts were alleged about his role and responsibilities as program administrator or how he may have been acting in his individual capacity.

The district court dismissed the original complaint after concluding that the remaining claim against Gesaman in his official capacity was really against the state and barred by Stevens. It also denied relator's motion to amend, reasoning that the

-4-

proposed amendment would be futile since Gesaman had been implementing a state policy on behalf of DHS and had performed no acts in his individual capacity.

Relator argues on appeal that the district court erred in denying it leave to amend because Gesaman is a person amenable to suit under the FCA and the Eleventh Amendment does not bar its claims for money damages against him in either his official or individual capacity. Gesaman responds that he did not act outside his official capacity, that he is not a person under the FCA because the state is the real party in interest, and that the claims are in any event barred by the Eleventh Amendment.

Although relator contended in its brief that Gesaman was a person under the FCA when he was acting in his official capacity,[2] it conceded at oral argument that this position was no longer viable under Stevens. Since a damage claim against a state official in his official capacity is a suit against the state, see Kentucky v. Graham, 473 U.S. 159 (1985), a state employee sued for money damages for actions taken in an official capacity stands in the shoes of the sovereign and is not a person under the FCA. See Stevens, 529 U.S. at 788. The district court did not err in dismissing the damage claim against Gesaman in his official capacity.

Permission to file a first amended complaint "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), but denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." Sanders v. Clemco Indus., 823 F.2d 214, 216 (8th Cir. 1987). The denial of leave to amend based on futility means that the court found that the amended complaint failed to state a claim, and our review is therefore

---

[2]Relator had argued in its brief that United States ex rel. Rodgers v. Arkansas, 154 F.3d 865 (8th Cir. 1999), would permit the suit against Gesaman in his official capacity. Rodgers did not address the statutory question of whether a damages claim can be made under the FCA against state officials in their official capacity, however.

de novo.  See J.R. Stripling v. Jordan Prod. Co., LLC, 234 F.3d 863, 873 (5th Cir. 2000); Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

The FCA, 31 U.S.C. § 3729, subjects to liability "[a]ny person" who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." Although "person" has been defined by Congress to include "individuals," 1 U.S.C. § 1, the term does not include states or state agencies.  See Stevens, 529 U.S. at 788-89, *overruling in part*, United States ex rel. Zissler v. Regents of the Univ. of Minn., 154 F.3d 870, 874-75 (8th Cir. 1998) (holding that states are persons under the FCA).

Relator argues that Gesaman is a person when sued in his individual capacity for money damages under the FCA and claims that Gesaman acted in his individual capacity in extending the eligibility requirements and that the state is not the real party in interest.  It also argues that whether an official is a person under the FCA should be construed the same as "person" under 42 U.S.C. § 1983.  Gesaman responds that the state is the real party in interest because he did not act in his individual capacity, the Iowa indemnification statute would require that any judgement be paid with state funds, the complex DHS administrative process impacts critical aspects of state sovereignty, and a judgment against him would require Iowa to alter its waiver program.

In determining whether a state official may be liable for money damages in his individual capacity, courts should not rely wholly on "the elementary mechanics of captions and pleading."  Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270 (1997).  We should look at whether the alleged conduct of the defendant was "outside of [his] official duties."  Bly-Magee v. California, 236 F.3d 1014, 1016 (9th Cir. 2001).  Relator's allegations arise out of a multi year federal waiver program which Iowa was to administer, and Iowa delegated responsibility to determine eligibility to DHS and Gesaman.  Iowa was the party which had the contractual relationship with

the United States which would make it liable to the federal government for monies wrongly paid. After <u>Stevens</u> an FCA relator can no longer pursue money damages from the state, which Gesaman claims is the real party in interest.

When relator's original claims were blocked by the <u>Stevens</u> decision, relator attempted to add a claim against Gesaman in his individual capacity for the same acts it had previously alleged he was performing in his official capacity. Relator added no new or different factual allegations in its amended complaint, but simply reworded its complaint to remove Iowa and DHS as defendants and to eliminate statements that Gesaman was acting "for the Defendant State and DHS." Relator has not alleged what Gesaman's specific duties or powers were as administrator of the program or how he acted outside those duties by issuing eligibility standards which allegedly conflicted with state regulations.

Without any allegations about the extent and nature of Gesaman's duties, the mere assertion that he issued standards that conflicted with state law does not allege actions outside his official duties as administrator of the waiver program. Relator also has not provided any specifics of the agreements between the United States and Iowa or how Gesaman's actions may have been in violation of those agreements and federal law. Under these circumstances, the district court did not err in denying the motion for leave to amend to add a new claim against Gesaman in his individual capacity.[3]

Since the district court did not err in dismissing the complaint or in denying the motion to amend, we affirm the judgment.

---

[3]In light of this conclusion, we need not consider whether a state official sued in his individual capacity is a person under the FCA or whether the claims against Gesaman are barred by the Eleventh Amendment. We also need not reach the issue of whether the term "person" under the FCA should be construed as under § 1983, a position advanced by relator without citation to any authority.

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. The court's opinion today overlooks Hafer v. Melo, 502 U.S. 21 (1991), which should guide our interpretation of what actions may be filed against state employees in their individual capacities.

Here, the law firm as relator brought a qui tam action under the False Claims Act, 31 U.S.C. §§ 3729-33 (1994), on March 28, 1997. The complaint named the State of Iowa, the Iowa Department of Human Services, and numerous employees, including Gary Gesaman, as defendants. The original complaint did not specify the capacity in which Gesaman was being sued. On May 22, 2000, the Supreme Court decided Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765 (2000), holding that a qui tam action brought against a state under the False Claims Act must be dismissed because under the statute a state is not a person for the purposes of qui tam actions.[4] Stevens was based purely upon principles of statutory construction, and the Court found it unnecessary to consider whether the Eleventh Amendment would bar such actions. 529 U.S. at 787. Thereafter, relators in this case filed a motion for leave to amend their complaint, dismissing the state and all of its agencies and asserting claims against Gesaman in his official and individual capacity.

The district court interpreted Stevens to mean that Gesaman, the state official who implemented the state policy on behalf of the Department of Human Services, was not subject to liability in either his individual or official capacity. It stated that the alleged conduct for which Gesaman was named as a defendant was part of his duties as a state employee; thus, in performing the alleged acts, he was the State of Iowa personified, and so not subject to suit. In my view the district court erred and

---

[4] See 31 U.S.C. § 3729(a) (1994) ("any person" who knowingly presents a false or fraudulent claim to the United States for payment or approval is liable for damages).

should have exercised its discretion to permit the filing of the amended complaint.[5]

The district court, and the court today, fail to take into consideration the teaching of the Supreme Court in Hafer, a 42 U.S.C. § 1983 case against state officers in their individual capacities that was based on actions the officers had taken in the course of their official duties. A prior decision had determined that "neither a state nor its officials acting in their official capacities are 'persons' under § 1983." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989). A unanimous Supreme Court[6] nonetheless determined that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." Hafer, 502 U.S. at 31 (emphasis added). In reaching that conclusion, the Court expressly rejected any distinction based on whether the actions at issue were within the scope of the official's authority. The Court reasoned that not to allow personal capacity suits against state officials acting within the scope of their authority would "absolutely immunize state officials from personal liability for acts within their authority . . . . Yet our cases do not extend absolute immunity to all officers who engage in necessary official acts." Id. at 28.

Like the Court in Hafer, we confront a statute that excludes states and state agencies from its definition of "persons" that can be sued, Stevens, 529 U.S. at 788, and we must decide whether that statute nonetheless allows state officials to be sued in their individual capacities. As the court recognizes, 1 U.S.C. § 1 (1994) creates a

_____

[5] The district court also based its decision on the belief that this court, in light of Stevens, would overrule United States ex rel. Rodgers v. Arkansas, 154 F.3d 865, 868 (8th Cir. 1998) (holding that a qui tam action under the False Claims Act "is a suit by the United States for Eleventh Amendment immunity purposes"). I agree that Rodgers has lost most of its validity in light of Stevens, and I also agree with the court today, supra at 6, that Stevens has overruled United States ex rel. Zissler v. Regents of the University of Minnesota, 154 F.3d 870 (8th Cir. 1998), to the extent that decision held that states are persons under the False Claims Act.

[6] Justice Thomas took no part in the consideration or decision.

presumption that natural persons are covered by the use of the term "person" in a statute. Supra at 6; see also Stevens, 529 U.S. at 784 n.14. Neither the court nor Gesaman has provided any rationale of statutory construction to overcome that presumption. In light of Hafer, I would hold that state officials may be sued in their individual capacity under the False Claims Act. See Luder v. Endicott, 253 F.3d 1020, 1022 (7th Cir. 2001) (interpreting Fair Labor Standards Act, in light of Hafer, to permit a claim against state officers in their individual capacities); cf. Alden v. Maine, 527 U.S. 706, 757 (1999) ("[A] suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself . . . ."). But see Lizzi v. Alexander, 255 F.3d 128, 137 (4th Cir. 2001) (declining to apply Hafer to Family and Medical Leave Act case, in part because Hafer was decided under § 1983).

Only after we have concluded that the False Claims Act permits state officials to be sued in their individual capacities do we ask whether the state is nevertheless the real party in interest and whether the suit is thus barred by the Eleventh Amendment. See Luder, 253 F.3d at 1022 (analyzing first whether plaintiff can state claim against supervisor in individual capacity under Fair Labor Standards Act, and only after answering that question in the affirmative discussing whether suit is really against the state for purposes of the Eleventh Amendment). This is the true significance of the Supreme Court's statement in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261, 270 (1997), cited in part by the court today, supra at 6, that "[t]he real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading."

In addressing the Eleventh Amendment question presented here, it is important to recognize that "[a]s a general rule, suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment." Cornforth v. Univ. of Okla. Bd. of Regents, No. 00-6119, 2001 WL 930019, at *2 (10th Cir. Aug. 16, 2001) (citing Hafer, 502 U.S. at 30-31, and Alden, 527 U.S. at 757). However, even

where a state official is sued in his or her individual capacity, the "Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101 (1984) (quoting Ford Motor Co. v. Dep't of Treasury of Ind., 323 U.S. 459, 464 (1945)).  The state is the real party in interest when the judgment is sought from the public treasury, when the judgment would interfere with public administration, or when the judgment would restrain or compel state action.  Id., at 101 n.11.  The fact that the state here has chosen to indemnify its officials does not make it the real party in interest.  Luder, 253 F.3d at 1023 (citing cases).  Nor is this a case where the judgment sought will interfere with public administration or restrain the state from acting or compel it to act.  Holding Gesaman personally liable for violating regulations of the state and thereby defrauding the United States would not place any type of onerous burden on the state, it would in fact "advance rather than thwart state policy." Luder, 253 F.3d at 1024; see Cornforth, 2001 WL 930019, at *3 (declining to find state real party in interest, in part because judgment against individual state employee would not "legally require" state university to comply with federal regulation).  But cf. Lizzi, 255 F.3d at 137 ("The state would still suffer the indignity of having each discrete decision regarding personnel or organization matters subject to second-guessing by a federal court.").

Finally, the court today quotes Bly-Magee v. California, 236 F.3d 1014, 1016 (9th Cir. 2001), for the proposition that "[w]e should look at whether the alleged conduct of the defendant was 'outside of [his] official duties.'" Supra at 6.  This scope-of-duty analysis, however, is more properly applied to the defense of personal immunity, as it in fact was in Bly-Magee.  236 F.3d at 1017-18 (acknowledging that qui tam claims under the False Claims Act fail as to the state and its agencies in light of Stevens, but analyzing claims against individual state officials in terms of immunity); cf. Hafer, 502 U.S. at 31 ("To be sure, imposing personal liability on state officers may hamper their performance of public duties.  But such concerns are properly addressed within the framework of our personal immunity jurisprudence.").

-11-

Because the district court did not allow the complaint to be amended so as to include a claim against Gesaman in his individual capacity, any affirmative defenses, including qualified immunity, are not before us.  See Barrett v. Thomas, 649 F.2d 1193, 1201 (5th Cir. 1981).

I would reverse the district court and allow amendment of the complaint to include claims against Gesaman in his individual capacity.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.